993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brenda TALIAFERRO, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Isabel Martinez, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Linda Taliaferro, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Patricia Beckford, a/k/a Annette, a/k/a Pat, a/k/a Trish,
Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Kenneth Brown, a/k/a Kent, Defendant-Appellant.
 Nos. 92-5265, 92-5311, 92-5312, 92-5341, 92-5517.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993
Decided: May 11, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. Rebecca B. Smith, District Judge. (CR-91-69-NN)
 Charles E. Haden, Hampton, Virginia; David Bruce Olson, Newport News, Virginia; Terrence Keech Martin, Newport News, Virginia; Bryan Leslie Saunders, Newport News, Virginia, for Appellants.
 Cathy Ellen Krinick, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.
 W. Dean Short, II, Newport News, Virginia, for Appellant Brown.
 Richard Cullen, United States Attorney, Norfolk, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and HAMILTON, Circuit Judges, and POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 In this consolidated appeal, appellants, Brenda Taliaferro (Brenda), Linda Taliaferro (Linda), Isabel Martinez, Patricia Beckford, and Kenneth Brown appeal the judgment entered by the district court in their respective cases. Finding no error, we affirm.
 
 
 2
 * This case involved a conspiracy to distribute cocaine base (crack) in the Hampton and Portsmouth areas of Virginia from July 1988 until August 1991. The conspiracy was headed by Lazaro Sotolongo with Beckford as Sotolongo's chief lieutenant. Brenda, twin sister of Linda, assumed the role of dealer and courier, receiving crack for distribution from Sotolongo and Beckford. Linda and Brown acted essentially as street dealers. Martinez, one of Sotolongo's girlfriends, was a courier for the Sotolongo organization.
 
 
 3
 During the course of the conspiracy, in addition to money, crack was exchanged for United States Department of Agriculture food coupons. For example, over the course of three days: Brenda distributed .61 grams of crack in exchange for $400 in food coupons; Linda distributed .30 grams of crack in exchange for $245 in food coupons; and Brown distributed .44 grams of crack in exchange for $200 in food coupons. In addition, about a week later, Beckford distributed 8.4 grams of crack in exchange for $5,500 in food coupons.
 
 
 4
 In October 1991, the appellants were charged in a twenty-seven count indictment, along with four others, with various violations of federal statutes, including conspiracy to possess with the intent to distribute and distribute crack in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one). The indictment also charged Brenda (counts seventeen and nineteen), Linda (counts thirteen and fifteen), Beckford (count twenty-seven), and Brown (count twenty-five) with unauthorized use of food coupons in violation of 7 U.S.C.s 2024(b). Brenda, Linda, Beckford, and Brown each pleaded guilty to the conspiracy count and one count of unauthorized use of food coupons. Martinez pleaded guilty to a superseding criminal information which charged her with the unauthorized use of food coupons. On appeal, the appellants raise numerous assignments of error. We shall address each argument in turn.
 
 II
 
 5
 Brenda's chief contention on appeal is that the district court erred in finding that she had not "accepted responsibility" and, as a result, refusing to reduce her offense level by two levels under U.S.S.G. § 3E1.1. We review findings made by the district court pursuant to U.S.S.G. § 3E1.1 under the clearly erroneous standard. United States v. Harris, 882 F.2d 902, 905 (4th Cir. 1989). U.S.S.G. § 3E1.1[1] provides for a two level reduction of a defendant's offense level where the defendant affirmatively accepts responsibility for all of her criminal conduct. While it is true that the entry of a plea of guilty, coupled with the admission of involvement in the offense and related conduct, constitutes significant evidence of acceptance of responsibility, this evidence may be outweighed by evidence that shows that the defendant has not accepted responsibility. Id. at (Commentary, application n.3).
 
 
 6
 Brenda asserts that she accepted responsibility as evidenced by her: (1) pre-indictment confession; (2) plea of guilty; (3) admission of involvement in the Sotolongo organization when meeting with the probation officer; and (4) testimony at sentencing. At sentencing, however, the government offered evidence which demonstrated that Brenda's account of the extent of her involvement in the Sotolongo organization vacillated on no less than two occasions. In recognizing this, the district court noted: "apparently [Brenda] tells one story one day and another story the next day." Joint Appendix (J.A.) at 101.
 
 
 7
 In light of the evidence that the government produced at sentencing, the district court's finding that Brenda had not accepted responsibility was not clearly erroneous. See United States v. Gordon, 895 F.2d 932, 936 (4th Cir.) (in order for § 3E1.1 to apply defendant must accept responsibility for all of his criminal conduct), cert. denied, 111 S. Ct. 131 (1990) (citing United States v. Moskowitz, 888 F.2d 223 (2d Cir. 1989); United States v. Tellez, 882 F.2d 141 (5th Cir. 1989)).[2]
 
 
 8
 Brenda also objects to the $5,000 fine imposed by the district court. Brenda contends the district court failed to make a specific finding that she could pay the $5,000 fine as required by 18 U.S.C. § 3572. In United States v. Harvey, 885 F.2d 181, 182 (4th Cir. 1989), we held that the district court must make specific findings on the factors enumerated in 18 U.S.C. § 3572, including defendant's ability to pay. Failure to do so will result in the vacation of the fine imposed. See, e.g., United States v. Arnoldt, 947 F.2d 1120 (4th Cir. 1991) (vacating $5,000 fine under Harvey ). In imposing the $5,000 fine, the district court stated:
 
 
 9
 I fine you $5,000. As far as I'm concerned, it can be paid from monies that you earn while you are incarcerated. If it is not paid upon your release, it has to be paid in your five years of supervised release. At that point, you won't have minor children, and there is no reason why you are not capable of working.
 
 
 10
 J.A. at 111. We believe the district court's finding on Brenda's ability to pay complied with Harvey. The district court believed that Brenda would be able to pay the $5,000 fine during her period of incarceration and supervised release. While it is true that Brenda had less than $1,500 in assets at the time of sentencing, in light of the length of Brenda's sentence (210 months' imprisonment followed by sixty months' supervised release), it was manifestly reasonable for the district court to conclude that Brenda would be able to pay the $5,000 fine with monies earned during her lengthy period of incarceration and supervised release. "[C]ourts are presumed to have some passing familiarity with conditions of confinement at a federal prison, including how much prisoners get paid." United States v. Taylor, 984 F.2d 618, 622 (4th Cir. 1993). Following the reasoning of Taylor, we must affirm the fine imposed. Id. (upholding $2,000 fine under Harvey where defendant had five years in prison and three years' supervised release to pay the fine).
 
 III
 
 11
 Martinez challenges the district court's decision to upwardly depart from her guideline range pursuant to U.S.S.G. § 5K2.0.[3] The crux of Martinez' argument is that the district court essentially sentenced her for conspiracy to distribute crack, despite the fact that she pleaded guilty to the unauthorized use of food coupons in violation of 7 U.S.C. § 2024(b). The applicable guideline range for Martinez was two to eight months' imprisonment. The district court imposed a sentence of sixty months. The district court based its decision to depart on the following factor that it believed was not adequately taken into consideration in formulating the Guidelines: that the Sentencing Commission, in establishing the sentencing Guidelines, did not consider that the unauthorized use of food coupons might include the exchange of those coupons for crack. In reaching this conclusion, the district court stated:
 
 
 12
 First of all, the guidelines have been calculated under the fraud provisions, which is the appropriate place to calculate a food coupon fraud crime.
 
 
 13
 However, because of the low value of the food coupons involved, there has been no consideration given to-it hasn't been upped at all for any seriousness of the fraud. The fraud guidelines are designed to consider the fraud based upon the monetary amount of the fraud. And in this case the monetary amount of $300 does not adequately reflect the seriousness of the fraud involved in this case. This is fraud, admittedly from this defendant and from all the other co-conspirators, and just from this defendant alone, this is an exchange of food coupons for crack cocaine, and a $300 guideline on fraud does not adequately reflect the seriousness of the fraud in this case.
 
 
 14
 J.A. at 169-70.
 
 
 15
 We review departures under the multi-part "reasonableness" test established in this circuit. United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 111 S. Ct. 1608 (1991); United States v. Summers, 893 F.2d 63 (4th Cir. 1990). The test requires us first to review de novo "the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors 'not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' " Hummer, 916 F.2d at 192 (citing 18 U.S.C.A. § 3553(b)). If the district court has cited factors not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines, we next review the sufficiency of the evidence supporting the cited factor warranting departure under the clearly erroneous standard. Hummer, 916 F.2d at 192. We next consider whether the district court abused its discretion in determining that the factor is sufficiently important such that a sentence outside the Guidelines range should result and whether the extent of departure is reasonable. Id.
 
 
 16
 We believe the district court was correct when it held that U.S.S.G. § 2F1.1 did not take into account the potential harm to society when the unauthorized use of food coupons involved the exchange of food coupons for crack. 18 U.S.C. § 3553(b). The Commentary to U.S.S.G. § 2F1.1 recognizes that the loss table may not"fully capture the harmfulness and seriousness of the conduct.... " U.S.S.G. § 2F1.1 (Commentary, application n.10). This is especially true when the "primary objective of the fraud is non-monetary." Id. at (Commentary, application n.10(a)). Unquestionably, the exchange of food coupons for crack is profoundly more detrimental to society than the simple exchange of food coupons for money. In short, U.S.S.G. § 2F1.1 does not adequately consider that the unauthorized use of food coupons may involve the exchange of food coupons for crack.
 
 
 17
 We also believe the evidence supported the district court's finding that Martinez' unauthorized use of food coupons involved an exchange of food coupons for crack. Martinez shared an apartment with Sotolongo in New Jersey. During the course of the conspiracy, Martinez also had a house in Miami, Florida. The evidence presented demonstrated that Martinez was integrally involved in the drug activities of the Sotolongo organization, which engaged in the exchange of food coupons for crack. In fact, $10,000 worth of food coupons which had been acquired by Sotolongo in exchange for crack was recovered during the search of the apartment that Sotolongo shared with Martinez. Most tellingly, on each of ten occasions, Martinez delivered twenty-five rocks of crack to Sotolongo and accompanied Sotolongo on trips in which crack was procured. In our view, this evidence amply supports the district court's finding.
 
 
 18
 We turn then to the question of whether the district court abused its discretion in determining that the exchange of food coupons for crack is "of sufficient importance that a sentence outside the Guidelines range 'should result.' " Hummer, 916 F.2d at 192 (citing 18 U.S.C. § 3553(b)). The seriousness of the exchange of food coupons for crack and the detrimental impact on society that results from such conduct cannot be overemphasized. Suffice it to say, that we cannot view the district court's upward departure as an abuse of discretion.
 
 
 19
 Furthermore, we also believe the district court acted reasonably in departing upward based upon Martinez' involvement in the conspiracy because that conduct was certainly relevant. Finally, the extent of the departure was reasonable under the circumstances. The sentence imposed was in fact below the sentence Martinez would have received had she pleaded guilty to the conspiracy count. Accordingly, we conclude there was nothing infirm with Martinez' sentence.
 
 IV
 
 20
 Brown argues that the district court erred in refusing to allow him to withdraw his guilty plea. We find this argument to be without merit.
 
 
 21
 At Brown's plea hearing on February 11, 1992, a routine Rule 11 colloquy took place. At the hearing, among other things, Brown acknowledged that:
 
 
 22
 (a) he understood the charges pending against him;
 
 
 23
 (b) he told his attorney all the facts about the case;
 
 
 24
 (c) his attorney had discussed with him the nature of the charge and reviewed the plea agreement with him;
 
 
 25
 (d) he was satisfied with the representation of his attorney;
 
 
 26
 (e) if his plea were accepted, he could be imprisoned for a minimum of ten years and a maximum of life;
 
 
 27
 (f) he could choose to plead not guilty and go to trial;
 
 
 28
 (g) no person made any promises or threats to him to induce him to plead guilty;
 
 
 29
 (h) no person including his attorney and the Assistant United States Attorney made any promises of leniency;
 
 
 30
 and
 
 
 31
 (i) he was guilty of counts one and twenty-five of the indictment.
 
 
 32
 J.A. at 575-86.
 
 
 33
 A short time after he pleaded guilty,[4] Brown sought to withdraw his guilty plea. The district court held a full evidentiary hearing regarding Brown's motion to withdraw. Brown testified that he lied to the district court at his Rule 11 hearing when he stated that: (1) he was guilty; (2) he understood the plea agreement; and (3) he was satisfied with his counsel's representation. Jones testified that she had prepared for trial but thought it was in Brown's best interest to obtain a plea agreement that put a limit on the amount of drugs attributable to him. According to Jones, she had no doubt that Brown understood the consequences of his plea and that the decision to plead guilty was completely his. At the plea withdrawal hearing, it was also revealed that before Brown signed the plea agreement, he asked Jones if she could arrange for him to see his child. Jones testified that she knew Brown "was extremely concerned that if he got this time, that he would not have a contact visit and he would not see the child." J.A. at 649. Jones also testified that she made it clear to Brown that this was not part of the plea agreement.
 
 
 34
 The district court found that Brown was represented reasonably and professionally. The district court also found that Brown's request to see his child was not part of the plea agreement, but merely an accommodation. Finally, the district court concluded Brown entered the plea knowingly and voluntarily.
 
 
 35
 We review the district court's denial of a motion to withdraw a guilty plea under Fed. R. Crim. Proc. 32(d) for an abuse of discretion. United States v. Craig, No. 92-5145, slip op. at 5 (4th Cir. February 8, 1993) (citing United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 112 S. Ct. 171 (1991)). See also United States v. Lambey, 974 F.2d 1389, 1393 (4th Cir. 1992) (en banc); United States v. McHan, 920 F.2d 244, 246-47 (4th Cir. 1990). To prevail on appeal, Brown must demonstrate that "the district court abused its discretion in determining that [he] had not shown'a fair and just reason' for being allowed to withdraw his guilty plea...." Craig, slip op. at 5 (citing Moore, 931 F.2d at 248)). In Moore, we noted several factors that may be considered in determining whether a defendant has met his burden under Rule 32(d):
 
 
 36
 (1) Whether the defendant has offered credible evidence that his plea was not knowing or voluntary;
 
 
 37
 (2) Whether the defendant has credibly asserted his legal innocence;
 
 
 38
 (3) Whether there has been a delay between the entering of the plea and the filing of the motion;
 
 
 39
 (4) Whether the defendant has had close assistance of competent counsel;
 
 
 40
 (5) Whether withdrawal will cause prejudice to the government; and
 
 
 41
 (6) Whether withdrawal will inconvenience the district court or waste judicial resources.
 
 
 42
 Id., 931 F.2d at 248 (citations omitted).
 
 
 43
 After reviewing the Moore factors, we conclude that all but factor (3) weigh decidedly in the government's favor. First, Brown has neither proffered credible evidence that his plea was not knowing or voluntary, nor has he credibly asserted his innocence. Second, there is no evidence that Brown did not receive the assistance of competent counsel. Third, there was an ample showing of prejudice to the government. The plea was taken on the day of trial with over forty witnesses assembled by the government, many of whom came from prisons all over the country. Fourth, it is clear that some judicial resources would have been exhausted if Brown had been allowed to withdraw his guilty plea and the case had proceeded to trial. This substantial evidence militating against withdrawal, weighed against the fact that Brown sought to withdraw his guilty plea a short time after it was taken by the district court, compels us to conclude that the district court did not abuse its discretion in refusing to allow Brown to withdraw his guilty plea.
 
 V
 
 44
 Beckford challenges the district court's decision to increase her offense level three levels for her role in the offense under U.S.S.G. § 3B1.1(b). We review this for clear error. United States v. Sheffer, 896 F.2d 842 (4th Cir.), cert. denied, 111 S. Ct. 432 (1990). U.S.S.G. § 3B1.1(b) provides for a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." The evidence produced at sentencing made clear that the Sotolongo organization involved many more than five participants. The evidence also revealed that Beckford ran the day-to-day operation of the drug conspiracy in Sotolongo's absence. In fact, on one occasion, Beckford stated to undercover agents that "when you deal with ... me, you are dealing with Sotolongo." J.A. at 427. In light of this evidence, the district court's finding that Beckford was a manager or supervisor of a criminal activity involving five or more participants or was otherwise extensive was not clearly erroneous.[5]
 
 VI
 
 45
 For the reasons stated herein, the judgments of the district court are affirmed.
 
 AFFIRMED
 
 
 [1]
 Section 3E1.1 provides:
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by two levels.
 (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea of a finding of guilt by the court or jury or the practical certainty of conviction at trial.
 (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.
 
 
 [2]
 We find no merit to Brenda's argument that the district court erred in sentencing Brenda to a term of imprisonment within her guideline range. We also find no merit to Linda's argument that the district court's finding that she was not entitled to a two-level reduction in her offense level for acceptance of responsibility was clearly erroneous
 3 U.S.S.G. § 5K2.0 provides:
 Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts. Nonetheless, this subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court.
 
 
 [4]
 At the plea withdrawal hearing, Brown testified that he contacted his counsel, Bonnie Jones, two days after the district court accepted his guilty plea and expressed a desire to withdraw that plea. J.A. at 610
 
 
 [5]
 We find no merit to Beckford's argument that the district court committed reversible error in refusing to move her to a jail of her choice. Nor do we find merit to her argument that the district court erred in sentencing her to a term of imprisonment within her guideline range