UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 94-5117

GUALBERTO GARCIA,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 94-5118

JORGE MORERA,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 94-5119

MARSHALL ALLEN SLATER,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.

(CR-90-115)

Argued: December 6, 1995

Decided: February 9, 1996

Before WILKINSON and WILLIAMS, Circuit Judges, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Robert Alan Rosenblatt, Miami, Florida, for Appellant
Garcia; Gregory William Bowman, CHASLER, ADRIAN & BOW-
MAN, P.L.C., Winchester, Virginia, for Appellant Slater; William
Frederic Jung, BLACK & JUNG, P.A., Tampa, Florida, for Appellant
Morera. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Roa-
noke, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr.,
United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Gualberto Garcia, Jorge "George" Morera, and Marshall
Slater appeal their convictions for conspiracy to possess with intent
to distribute and to distribute cocaine, in violation of 21 U.S.C.A.
§ 846 (West Supp. 1995). They challenge numerous rulings by the
district court during their trial. Additionally, Garcia challenges his
sentence and the forfeiture of his interest in his residence and business
under 21 U.S.C.A. § 853(a) (West Supp. 1995). Because we find that
all of Appellants' challenges lack merit, we affirm their convictions
and reject Garcia's challenges to his sentence and order of forfeiture.

2

I.

We recount the facts in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942). In early 1989, Special Agents of the Drug Enforcement Administration investigating an extensive cocaine distribution conspiracy in Northern Virginia discovered that Osvaldo Castanon, a cocaine broker in Naples, Florida, was supplying the Virginia network through intermediaries. Eventually, the investigation revealed that Castanon was a common link between Garcia, Morera, and Slater, among other coconspirators. By identifying and interviewing various coconspirators, the Government learned that, between approximately 1987 and 1988, Castanon obtained about two to three kilograms of cocaine weekly from Garcia through two couriers. The Government also learned that Morera, a deputy sheriff in Collier County, Florida, protected Castanon from detection on several occasions in 1987 by warning him of police activity in his neighborhood. Finally, the agents discovered that Castanon sold cocaine to Slater, who resided in Ohio, on several occasions in 1987 at Castanon's home in Florida.

In August 1992, a grand jury for the Western District of Virginia returned a one-count indictment charging Garcia, Morera, and Slater with conspiracy to possess with the intent to distribute and to distribute cocaine, in violation of 21 U.S.C.A. § 846. In addition, the grand jury charged that Garcia's interest in the residence and the business, B&G Ceramics, that Garcia and his wife jointly owned were subject to forfeiture under 21 U.S.C.A. § 853(a) because he used them to facilitate the conspiracy.

After a twelve-day trial featuring Castanon as the Government's central witness, the jury convicted all three Appellants. Over Garcia's objections, the district court subsequently ordered forfeiture of Garcia's interest in his residence and business and sentenced him to 220 months imprisonment. The district court sentenced Morera to 97 months imprisonment and Slater to 84 months imprisonment.

Challenging their convictions on numerous grounds, Garcia, Morera, and Slater appeal. We address each assignment of error in turn, including Morera's claim that he was denied the effective assistance of counsel, Appellants' challenges to various trial rulings, their

3

assignments of error relating to the district court's jury instructions, their contention that the evidence against them is insufficient to support their convictions, and Garcia's challenge to his sentence and the district court's forfeiture order.

II.

Morera first contends that his retained trial counsel, Jeffrey Quinn, provided ineffective assistance of counsel because of multiple undisclosed conflicts of interest. After the jury returned a guilty verdict, Morera hired new counsel, who moved the district court under Federal Rule of Criminal Procedure 33 for a new trial based on Quinn's alleged conflicts of interest. After a hearing, the district court denied the motion, concluding that Quinn had "pursued Mr. Morera's defense zealously, with no hint of being burdened by any conflict of interest." (J.A. at 2265.) On appeal, Morera challenges the denial of his Rule 33 motion and argues that Quinn's conflicts of interest prejudiced Morera's defense, thereby denying him his Sixth Amendment right to counsel.

Because we conclude that the district court lacked jurisdiction to entertain Morera's Rule 33 motion for a new trial, we dismiss this portion of Morera's appeal. See United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995) (holding that a defendant must move for new trial based on ineffective assistance of counsel within seven days of verdict). Federal Rule of Criminal Procedure 33 provides that a "motion for a new trial based on any [grounds other than newly discovered evidence] shall be made within 7 days after verdict or finding of guilty." In Smith, we recently confirmed that information supporting a claim of ineffective assistance of counsel is not "newly discovered" evidence under Rule 33. 62 F.3d at 648. We therefore held that a Rule 33 motion based on ineffective assistance must be filed within seven days after the verdict. Morera filed his Rule 33 motion more than seven days after the jury returned a guilty verdict. [1] The district court therefore lacked jurisdiction to hear the motion.

_____

[1] In its January 10, 1994 order disposing of Morera's Rule 33 motion, the district court noted that Morera filed the motion more than seven days after the verdict. The district court nevertheless heard the motion, finding that evidence concerning the extent of Quinn's conflicts of interest was "newly discovered" and that the motion therefore was timely filed under Rule 33. Of course, the district court did not have the benefit of this Court's ruling in Smith when it heard Morera's motion.

Moreover, in view of the record before us, we decline to review Morera's ineffective-assistance claim under the Sixth Amendment on direct appeal. See United States v. Tatum, 943 F.2d 370, 379 (4th Cir. 1991) (observing that questions about the competency of trial counsel typically are "best left for collateral review"). In Tatum, we recognized that the effective performance of counsel guaranteed by the Sixth Amendment means "meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest." Id. at 375. Although Morera's claims about Quinn's alleged conflicts of interest are not frivolous, we nevertheless cannot review them on appeal because the record presently before us does not demonstrate conclusively the existence of unacceptable conflicts of interest. See Smith, 62 F.3d at 651; United States v. Matzkin, 14 F.3d 1014, 1017 (4th Cir. 1994) (noting ineffective assistance claim should be raised by motion under 28 U.S.C.A. § 2255 (West 1994)). In fact, in considering Morera's ineffective-assistance claim under Rule 33, the district court found no conflict of interest. On this record, we conclude that Morera's Sixth Amendment claim is best left for collateral review.[2]

III.

We turn now to Appellants' challenges to various rulings by the district court during their trial. Appellants contend that the district court committed reversible error by admitting evidence against them in violation of Federal Rules of Evidence 404(b) (other crimes) and 802 (hearsay). Moreover, they complain that they were entitled to a mistrial because the Government committed prosecutorial misconduct during its closing argument. We address each contention in turn.

A.

Appellants contend that the district court abused its discretion under Rule 404(b) by permitting Government witnesses to testify about events that occurred before the relevant dates of the charged conspiracy.[3] Due to the five-year statute of limitations, see 18

_____

[2] Morera may choose to raise this issue by moving the district court to set aside his conviction under 28 U.S.C.A. § 2255 (West 1994).

[3] Federal Rule of Evidence 404(b) provides that

5

U.S.C.A. § 3282 (West 1985) (providing five-year limitations period), the indictment handed down in August 1992 charged the defendants with participating in a conspiracy beginning in September 1987. As before the district court, Appellants urge us to hold that Rule 404(b) precluded testimony about drug transactions that took place before September 1987. Appellants also contest the admission of "other crimes" evidence on the ground that the Government failed to give them reasonable pretrial notice of the nature of the evidence, as Rule 404(b) requires.

We review the district court's evidentiary rulings for an abuse of discretion. See United States v. Francisco, 35 F.3d 116, 118 (4th Cir. 1994) (per curiam), cert. denied, 115 S. Ct. 950 (1995); United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986) (noting that the district court's decision to admit evidence under Rule 404(b) will not be overturned unless it was arbitrary or irrational). As set out below, we find that the district court did not abuse its discretion in ruling that most of the challenged testimony was admissible as background information or as evidence that was probative of a material issue other than character; we therefore affirm.

1.

Garcia protests the admission of testimony by various coconspirators that, between 1984 and June 1987, Garcia participated in cocaine transactions, was present during other cocaine transactions, and possessed cocaine. Garcia also objects to testimony regarding his sale of ounce quantities of cocaine in Naples, Florida, on the theory that

_____

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

6

those quantities are not relevant evidence of participation in a conspiracy to distribute cocaine in Northern Virginia.

Morera disputes the district court's admission of alleged Rule 404(b) evidence in several instances, including (1) testimony that he bought cocaine for his personal use in 1985, before becoming a police officer; and (2) testimony that he once permitted a friend of Castanon to travel in Morera's patrol car while carrying marijuana, as well as other statements.

The district court admitted much of the challenged evidence as background material to show "how the conspiracy operated" during the relevant period (J.A. at 571), and it twice instructed the jury to view the evidence in that light. During its jury charge, the district court further admonished the jury "not [to] consider any of this [pre-September 1987] evidence in deciding if the defendants committed the acts charged in the indictment." (J.A. at 2079.)

Appellants vigorously contend that evidence about events outside the scope of the indictment is inadmissible, but we take a more realistic view of conspiracies, whose duration rarely will coincide with the dates alleged in the indictment. As we ruled in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), cert. denied, 115 S. Ct. 939 (1995), the district court has discretion to admit "evidence of uncharged conduct . . . if it `arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime.'" Id. at 885 (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir.), cert. denied, 490 U.S. 1101 (1989)). For this reason, most of the testimony that Garcia and Morera challenge did not constitute "other crimes" evidence under Rule 404(b). Rather than character evidence, it was "predicate evidence necessary to provide context to the . . . drug distribution scheme that took place within the charged time frame." Kennedy, 32 F.3d at 885-86. The testimony either concerned events that arose out of the conspiracy, which in reality began long before September 1987, or was necessary to explain to the jury the roles Garcia and Morera played in the charged conspiracy: Garcia as supplier, and Morera as protector. This evidence thus was admissible background information that helped the jury to understand how the complex distribution scheme operated. See id. at 886. Moreover, as noted, the district court instructed the jury to

7

view the evidence as background material, and we presume that juries follow limiting instructions. Francisco, 35 F.3d at 119. The district court thus did not abuse its discretion in admitting the background testimony because the evidence did not fall within the scope of Rule 404(b).

2.

Morera also claims that other statements were inadmissible under Rule 404(b) because they were not background material, but rather impermissible character evidence. He objects to testimony that: (1) he attempted to coerce Castanon and his wife into falsely accusing an innocent man of committing a hit and run; and (2) he warned a known crack dealer, who was not a participant in the conspiracy, to "be careful." (J.A. at 1216.)

On Rule 404(b) grounds, Slater likewise contends that the district court abused its discretion. Over objection, the prosecutor elicited Slater's testimony on cross-examination that he previously had testified as an expert witness on the subject of marijuana "[c]ultivation, handling, selling, quantity, [and] quality." (J.A. at 1738.) According to Slater, the evidence served no purpose other than to convey his bad character to the jury, in violation of Rule 404(b).

Even accepting Morera and Slater's position that the foregoing evidence was "other crimes" evidence under Rule 404(b), much of it was admissible because it was probative of a material issue other than character. See United States v. Madden, 38 F.3d 747, 753 (4th Cir. 1994) (quoting Huddleston v. United States, 485 U.S. 681, 686 (1988)). The testimony regarding Morera's warnings to a known crack dealer and the Government's cross-examination of Slater about his stated expertise in a controlled substance were probative of Appellants' knowledge of drug dealing and absence of mistake regarding their actions in furtherance of the conspiracy. See Francisco, 35 F.3d at 119 (affirming admission of Rule 404(b) evidence regarding prior drug-related activity on these and other grounds); see also United States v. Rawle, 845 F.2d 1244, 1247-48 (4th Cir. 1988) (affirming admission of "prior bad acts" testimony to show knowledge, common scheme or plan, and a business enterprise in connection with drug

8

charges). Thus, the district court did not abuse its discretion in admitting this evidence.

With respect to the testimony that Morera attempted to implicate an innocent man in a hit-and-run car accident, we first note that Morera failed to object to this testimony at trial. We therefore review solely for plain error. See Fed. R. Crim. Proc. 52(b); see also United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). During the course of direct examination regarding Morera's visits to the Castanon home, Castanon testified:

> A: [Morera] went to my home. He showed me some pictures of a black man, and told me to go to the highway patrol and to show those photos.
>
> Q: What did he ask you, if anything, about the photograph?
>
> A: That I should show it as the man who had the accident with my car.
>
> Q: What did you say?
>
> A: I couldn't do it because I didn't know him.

(J.A. at 471.) Assuming this line of questioning elicited improper character evidence under Rule 404(b), we nevertheless will not reverse Morera's conviction on this basis because the error did not affect Morera's substantial rights, a prerequisite to reversal for plain error. See id. at 1434-35 (citing United States v. Olano, 113 S. Ct. 1770, 1777-78 (1993)). Reviewing for plain error, we are not to exercise our discretion to correct a forfeited error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 113 S. Ct. at 1776 (alteration in original) (internal quotation marks omitted). We conclude that the error here did not have such a grave effect on the overall fairness of Morera's trial. The testimony concerning the car accident was a brief portion of Castanon's examination, which lasted for many hours and otherwise contained very compelling evidence of Morera's guilt. We therefore affirm.

9

3.

Lastly, we reach Appellants' contentions that the district court erred in admitting the foregoing evidence because the Government failed to give reasonable notice under Rule 404(b). Rejecting this contention as well, we reiterate that the bulk of the challenged testimony was background information not within the scope of Rule 404(b), and thus did not require notice.

Although we agree, however, with Morera and Slater that the Government failed to notify them about certain specific instances of Rule 404(b) evidence, we conclude that the district court's admission of that evidence was harmless error. The pretrial notice included an unreasonably broad catch-all paragraph, indicating that the Government intended to present evidence of cocaine transactions "[a]t various times and places" before September 1987. (J.A. at 82.) That notice does not constitute fair warning of some of the Rule 404(b) evidence that was presented--for example, the testimony regarding the hit-and-run incident, Morera's tips to the unrelated crack dealer, and Slater's expertise with marijuana. Given the overwhelming evidence of Morera's and Slater's guilt, however, we can state with "fair assurance" that the jury's verdict was not swayed by that evidence. United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (holding reversal of a conviction because of nonconstitutional error is not warranted if the court can say "`with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'") (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). In view of the foregoing reasoning, we affirm the district court's admission of the challenged evidence.

B.

We next consider Garcia's challenge to the alleged hearsay testimony of five Government witnesses. The witnesses testified about conversations in which various declarants identified Garcia as a source of cocaine on different dates between 1984 and 1987. Garcia urges us to find that the declarants' statements were inadmissible hearsay under Federal Rule of Evidence 802. According to Garcia, the statements were not made in furtherance of the conspiracy because

10

they took place before September 1987, the date set forth in the indictment as the commencement of the conspiracy. Under his theory, the statements thus were not admissible under Federal Rule of Evidence 801(d)(2)(E) as admissions by coconspirators"during the course and in furtherance of the conspiracy."

Reviewing the district court's admission of the challenged statements for abuse of discretion, see United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), cert. denied, 113 S. Ct. 1013 (1993), we conclude that the statements were admissible under Rule 801(d)(2)(E). Under Rule 801(d)(2)(E), coconspirators' statements made in furtherance of the conspiracy are admissible as if they were the defendant's admissions. See United States v. Urbanik, 801 F.2d 692, 697 (4th Cir. 1986). To determine whether the statements were made "during the course" of a conspiracy, we first must evaluate whether the Government proved by a preponderance of evidence that a conspiracy existed between Garcia and the declarants at the time the statements were made. See Bourjaily v. United States, 483 U.S. 171, 181 (1987) (holding that consideration of the challenged statements, in addition to independent evidence, is proper). And, to reiterate, we take a realistic view of the true life of the conspiracy, which, a preponderance of the evidence showed, began long before September 1987. After reviewing the record, we conclude that the declarants engaged in cocaine trafficking with Garcia in connection with the charged conspiracy at the time the statements were made.

Second, to determine whether the statements were made "in furtherance of the conspiracy," we must examine the context in which the statements were made. See, e.g., United States v. Capers, 61 F.3d 1100, 1106 (4th Cir.) (holding that statements were made in furtherance of the conspiracy where Williams, the testifying witness, stated that during a conversation about purchasing drugs, the declarant made inculpatory statements about the defendant), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Dec. 4, 1995) (No. 95-7022); cf. Urbanik, 801 F.2d at 698 (holding that statement that Urbanik was a source for marijuana was inadmissible because the declarant made it as "a casual aside" during a conversation about weightlifting). With the exception of one conversation between Pedro Pinero and his teenage daughter, Magdelina Pinero, each of the conversations during which the challenged statements were made centered on cocaine and its source, Gar-

11

cia. Those statements were not casual asides in conversations unrelated to the conspiracy, as in Urbanik. They were made in furtherance of the conspiracy and were admissible.

Regarding Pinero's conversation with his daughter during which, she later testified, Pinero stated that Garcia was a cocaine courier, the record does not reflect whether this statement was made in furtherance of the conspiracy. Assuming it was not, the trial court's admission of the statement over Garcia's objection, however, was harmless. See Fed. R. Crim. Proc. 52(a). We shall not disturb that evidentiary ruling because it did not affect Garcia's substantial rights, given the compelling evidence against him. See United States v. Heater, 63 F.3d 311, 325 (4th Cir. 1995) (finding no reversible error because "a wealth of [other] testimony linked Heater to the drug conspiracy"), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Dec. 8, 1995) (No. 95-7090); Nyman, 649 F.2d at 211-12 (no reversible error if the Court can say with fair assurance that the error did not substantially sway the verdict). Based on the foregoing, we reject Garcia's challenge to the admission of the statements under Rule 801(d)(2)(E).

C.

Appellants next claim reversible error because of alleged misconduct by the Assistant United States Attorney who prosecuted them. Specifically, (1) Garcia contends that the prosecutor improperly commented during closing argument on his failure to testify, (2) Morera asserts that the prosecutor improperly commented during closing argument about his conduct in court, as well as that of his family, and (3) each Appellant claims that the prosecutor improperly commented during closing argument about the supposed dishonesty of the defense attorneys. We address each argument in turn.

In reviewing the prosecutor's alleged misconduct, we bear in mind that the verdicts must stand if, under all of the circumstances, the defendants received a fair trial. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). We shall not reverse their convictions unless improper remarks or conduct by the Government "prejudicially affected the defendant[s'] substantial rights so as to deprive [them] of a fair trial." Francisco, 35 F.3d at 120. Under this standard, we con-

12

clude that none of the prosecutor's allegedly improper remarks requires reversal.

1.

Garcia claims that various statements by the prosecutor during his closing argument adversely referred to Garcia's silence during the trial, in violation of the Fifth Amendment privilege against self-incrimination and the Due Process Clause. See Doyle v. Ohio, 426 U.S. 610, 618 (1976) (holding comments on defendant's silence after arrest violate due process); Griffin v. California, 380 U.S. 609, 615 (1965) (holding the Fifth Amendment forbids comment by the prosecutor on accused's failure to testify). Garcia cites several such statements by the prosecutor, including a remark alluding to his lawyer's conveying an idea "without going through the inconvenience of a witness testifying," (J.A. at 1840), and the comment that a coconspirator "didn't have to testify, because he has the privilege, like any defendant has, to not incriminate himself in an ongoing case before it's resolved." (J.A. at 2052.)

The test for determining whether those and other comments were improper is whether the remarks were "`manifestly intended to be, or [were] of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify.'" United States v. Whitehead, 618 F.2d 523, 527 (4th Cir. 1980) (quoting United States v. Anderson, 481 F.2d 685, 701 (4th Cir. 1973), aff'd, 417 U.S. 211 (1974)). We find that a reasonable jury would not view the prosecutor's statements as a comment on Garcia's failure to testify, and thus the challenged comments were not improper. Initially we note that Garcia did not object to the challenged statements at trial, a fact suggesting that even he did not view them as irregular at the time. See United States v. Jenkins, 544 F.2d 180, 181 (4th Cir. 1976) (per curiam) (reviewing Government's comment that its witness was "uncontradicted" in context of closing argument and finding no plain error where defendant failed to object to comment and district court instructed jury to draw no inferences from defendant's failure to testify), cert. denied, 431 U.S. 931 (1977). Additionally, the statements on their face do not appear to refer to Garcia's exercise of his privilege against self-incrimination. Finally, the district court explicitly instructed the jury not to draw any adverse inferences from

13

Garcia's and Morera's failure to testify. See James v. Kentucky, 466 U.S. 341, 350 (1984) (upon request, trial court is obliged to instruct jury not to draw an adverse inference from accused's failure to testify).

Finding that the comments were not improper, we likewise cannot say that the statements "so infected the trial and sentencing with unfairness that the ultimate conviction and sentence constituted a denial of due process." Gaskins v. McKellar , 916 F.2d 941, 951 (4th Cir. 1990) (finding no prosecutorial misconduct in saying the Government's evidence was undisputed because defendant could have contradicted that evidence without testifying), cert. denied, 500 U.S. 961 (1991). We therefore reject Garcia's view of the prosecutor's statements.

2.

Morera assigns as error the district court's overruling his objections to the prosecutor's comments about the nontestimonial conduct of Morera and his family. During closing argument, the Assistant United States Attorney remarked,

> You know, as I do, that throughout this trial, family members of the co-defendants have been very visible in the courtroom. Even children, little baby children have been in the courtroom paraded for your consideration.
>
> . . . .
>
> My suggestion to you is to be aware of that, be aware of the way that you've been manipulated or that manipulation has been attempted on you. There is no other reason for them to be here.
>
> You saw, as I did, a defendant crying during this trial from time to time. Tears welled up, looked like crab apples rolling down, big old tears.

(J.A. at 1840-41.) According to Morera, these comments not only introduced impermissible character evidence against him, but

14

deprived him of his Fifth Amendment right not to be convicted except on the evidence adduced at trial. See United States v. Carroll, 678 F.2d 1208, 1209-10 (4th Cir. 1982). During arguments on appeal, the Government urged us to find the comments were not grounds for reversing Morera's conviction. We agree.

In Carroll, we reversed a conviction because the prosecutor suggested that the defendant's in-court nontestimonial behavior--the defendant's pointing to a photograph of the crime scene and conferring with his lawyer--was evidence of guilt. Id. That comment clearly had a prejudicial effect on the defendant's constitutional rights, and reversal was required.

On the contrary, the prosecutor's comments about Morera's emotional state and his family's presence at trial did not deprive Morera of a fair trial. Here, the remarks were not as egregious as the declaration in Carroll that the defendant was familiar with the crime scene in the photograph because he had been there. Moreover, the impact of the prosecutor's comments here was lessened because the statements lasted only about twenty seconds out of a nearly two-hour summation. Finally, the prosecutor here implied that the jury should disregard the in-court conduct, rather than consider it as evidence of guilt, the misguided suggestion in Carroll. We thus conclude that the comments do not require reversal of Morera's conviction.

3.

Lastly, Appellants allege that their trials were unfair because the Assistant United States Attorney made certain disparaging remarks during his closing argument concerning the defense lawyers' supposed heckling, laughing, snickering, and telling falsehoods during the trial. The district court overruled objections to the statements and later, on motions for mistrial, concluded that the challenged remarks properly rebutted particular assertions by defense counsel during their closing arguments. We agree with the district court that the prosecutor's comments were not improper and thus reject Appellants' challenge on this basis.

IV.

Next, we consider Appellants' assignments of error regarding the district court's jury instructions. Appellants contest the district court's

15

refusal to include in its jury charge a definition of reasonable doubt and a multiple conspiracy instruction. Appellants further posit that the district court committed reversible error by instructing the jury that "slight evidence" would be sufficient to connect the defendants to the charged conspiracy. We consider these arguments seriatim.

A.

Morera and Slater first assign as error the district court's refusal to define the phrase "reasonable doubt" for the jury. Aware of contrary Fourth Circuit precedent, Appellants moved the district court to instruct the jury on the meaning of reasonable doubt. On appeal, Appellants claim that a question from the jury asking the court to define "knowingly and willingly" demonstrated the jury's confusion over the Government's burden of proof. We hold, however, that the district court correctly refused to give a reasonable doubt instruction.

We have "consistently and vigorously condemned the attempts of trial courts to define reasonable doubt." United States v. Reives, 15 F.3d 42, 45 (4th Cir.) (holding that district court did not err in refusing definition when jury requested one), cert. denied, 114 S. Ct. 2679 (1994). Moreover, on its face, the question that the jury posed to the district court in this case sought clarification of the intent element of conspiracy, rather than of the Government's burden of proof. The district court was correct in denying the requested instruction.

B.

Next, in related assignments of error, Appellants claim that the evidence at trial impermissibly varied from the allegations in the indictment and that the district court erred in refusing to deliver a multiple conspiracy instruction to the jury. Appellants claim that they were entitled to the instruction to support their defense that, while they may have participated in a smaller, Naples-based conspiracy, they had no connection with the larger network alleged by the indictment.

1.

Considering first the alleged variance, we find no basis for reversing the convictions. A variance may occur "when the evidence at trial

16

establishes facts materially different from those alleged in the indictment." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994), cert. denied, 115 S. Ct. 934 (1995). If a defendant shows "actual prejudice stemming from a multiple conspiracy variance," we will reverse his conviction. Id. To demonstrate actual prejudice, Appellants must prove that the presence of multiple defendants and evidence of multiple, separate conspiracies likely confused the jury, causing it to "transfer evidence from one conspiracy to a defendant involved in an unrelated conspiracy." Id. In Kennedy , we found no possibility of such an improper transfer taking place, even given the eight defendants and three related conspiracies involved in the case. Id.

Likewise, we find no possibility here that the jury transferred evidence among the three Appellants or between the two possible conspiracies (as alleged by Appellants), one in Naples, Florida and the larger, Northern Virginia conspiracy extending from Florida to Virginia. The evidence against each defendant was quite distinct from that against the others; we find no reason to suspect that the jury was confused about their respective roles in the conspiracy. Furthermore, as we discuss below, the evidence at trial supported the existence of the single conspiracy charged in the indictment. In short, there was no material variance. Even if it there were a material variance, Appellants were not prejudiced by it. Cf. United States v. Miller, 471 U.S. 130, 145 (1985) (concluding that the "variance complained of added nothing new to the grand jury's indictment and constituted no broadening"); Heater, 63 F.3d at 319 n.1 (noting that variance is harmless unless it affected defendant's substantial rights).

2.

For similar reasons, we reject the Appellants' claim that they were entitled to a multiple conspiracy instruction. Upon a request for jury instructions, a district court must assess whether the evidence presented by any of the parties at trial supports the defense contained in the proposed instructions. United States v. Gray , 47 F.3d 1359, 1369 (4th Cir. 1995). A multiple conspiracy instruction is required only if the "proof at trial demonstrates that [A]ppellants were involved . . . in `separate conspiracies unrelated to the overall conspiracy charged in the indictment.'" Kennedy, 32 F.3d at 884 (quoting United States v. Castaneda-Cantu, 20 F.3d 1325, 1333 (5th Cir. 1994)).

17

Recognizing the "superior position of the district court to evaluate evidence and formulate the jury instruction, we normally defer to a district court's decision to withhold" a requested instruction. Gray, 47 F.3d at 1368. In fact, once the district court has instructed on a single conspiracy and the jury has found that a single conspiracy existed, the Court should affirm "unless the evidence . . . would not allow a reasonable jury so to find." Urbanik, 801 F.2d at 695.

Appellants restate their position that a single conspiracy could not have existed because the conspirators did not share the common goal of distributing narcotics in Virginia and Ohio, as alleged in the indictment. We conclude, however, that the evidence in fact showed but a single conspiracy. We observe first that one "may be a member of a [single] conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993), cert. denied, 114 S. Ct. 1850 (1994). Indeed, as the Government emphasizes, under the chain theory of a conspiracy, the Government "need not prove a direct connection between the all the conspirators" in order to show a single conspiracy. United States v. Tarantino, 846 F.2d 1384, 1392 (D.C. Cir. 1988), cert. denied, 488 U.S. 840 (1988). The Government, moreover, was not required to show that the defendants possessed the specific intent to promote a particular cocaine consumption market, in Virginia or anywhere else. Instead, proof beyond a reasonable doubt that the conspirators shared a common, unlawful objective, such as sustaining the flow of cocaine through a distribution network, establishes a single conspiracy. See United States v. Johnson, 54 F.3d 1150, 1154 (4th Cir.), cert. denied, 116 S. Ct. 266 (1995) (affirming existence of single conspiracy where, although appellants were unfamiliar with each other and occasionally bought narcotics from sources unrelated to the conspiracy, appellants shared common supply sources and dealers).

With the foregoing evidence in mind, we cannot say that a reasonable jury could not have found that Appellants shared such a common, unlawful objective. See Urbanik, 801 F.2d at 696. Castanon was the common link tying Appellants to the conspiracy and to each other. Cf. id. (detailing the common supply sources of coconspirators). According to Castanon, each Appellant had regular and recurrent dealings with him over a period of years. Cf. Banks, 10 F.3d at 1054-

18

55 (noting that continuous course of dealing with conspirators demonstrates shared purpose). In addition, the large quantities of cocaine that changed hands between Garcia and Castanon and between Castanon and Slater suggest that Appellants were well aware that the cocaine network extended beyond their individual contacts with Castanon. See Tarantino, 846 F.2d at 1392 (noting single conspiracy may exist when "each conspirator knows of the existence of the larger conspiracy and the necessity for other participants, even if he is ignorant of their precise identities."). We therefore affirm the district court's refusal to deliver a multiple conspiracy instruction.

C.

Finally, we turn to Morera's challenge to the district court's jury instruction regarding the evidence necessary to show a defendant's voluntary participation in a conspiracy. Morera claims that the jury charge impermissibly lowered the Government's burden of proof by requiring only slight evidence of the defendant's participation.

The district court charged the jury:

> If the Government proves to you the existence of a conspiracy beyond a reasonable doubt, you may find a particular defendant guilty of participation in that conspiracy, even if the evidence of his membership in the conspiracy is slight. However, the evidence must still convince you beyond a reasonable doubt that that particular defendant was indeed a member of the conspiracy.

(J.A. at 2084.) We review the district court's formulation of the instructions for an abuse of discretion and its statement of the law de novo. See United States v. Piche, 981 F.2d 706, 711 (4th Cir. 1992) (noting district court has "considerable discretion in choosing the specific wording of instructions"), cert. denied , 113 S. Ct. 2356 (1993). In so doing, we must consider whether there is a reasonable likelihood that the jury applied the instruction in an unconstitutional manner. See Victor v. Nebraska, 114 S. Ct. 1239, 1243 (1994) (reviewing reasonable doubt instruction).

19

The district court's instructions draw on our decision in <u>United States v. Brooks</u>, where we held that "[o]nce it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." 957 F.2d 1138, 1147 (4th Cir.), <u>cert. denied</u>, 505 U.S. 1228 (1992). The Government, of course, must show the "slight connection" between the defendant and the conspiracy beyond a reasonable doubt. <u>See In re Winship</u>, 397 U.S. 358, 361 (1970). Although inexact, the district court's instructions, read in their entirety, set forth that burden of proof. We do not perceive a reasonable likelihood that the jurors applied a lower standard than proof beyond a reasonable doubt that the defendants were members of the conspiracy. We therefore reject Morera's argument on this basis.

V.

We next turn to Appellants' contention that the district court erred in not granting their motions for acquittal because the evidence was insufficient as a matter of law to prove they participated in the charged conspiracy. Because we conclude that a rational jury could find Appellants guilty beyond a reasonable doubt on the evidence adduced at trial, we affirm.

To obtain the conspiracy convictions, the Government had to show beyond a reasonable doubt that Appellants "knew of the existence of, and voluntarily participated in, the conspiracy." <u>United States v. Morsley</u>, 64 F.3d 907, 919 (4th Cir. 1995), <u>cert. denied</u>, ___ U.S.L.W. ___ (U.S. Jan. 8, 1996) (No. 95-6942). Appellants' contentions focus on the Government's alleged failure to demonstrate their voluntary participation. In reviewing the sufficiency of evidence to support the convictions, we assess the record in the light most favorable to the Government, <u>see Glasser v. United States</u>, 315 U.S. 60, 80 (1942), and we affirm the verdicts "unless no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt," <u>United States v. Al-Talib</u>, 55 F.3d 923, 932 (4th Cir. 1995). Because substantial evidence supports the jury's finding that Appellants participated in the known conspiracy, we must sustain that finding. <u>See Glasser</u>, 315 U.S. at 80.

20

A.

We first consider the evidence against Garcia. As Appellants have contended throughout the course of the trial and this appeal, Garcia asserts that although the evidence may have shown a series of small, localized drug transactions in Naples, Florida, a rational jury could not infer from that evidence that Garcia voluntarily became part of a larger conspiracy to transport cocaine to Virginia and Ohio, the charge set forth in the indictment.

We disagree with Garcia's characterization of the Government's evidentiary burden in his case. Again, we reiterate that specific knowledge of the drug's ultimate destination is not an element of the crime of conspiracy. The Government thus was not required to show that Garcia intended the cocaine that he sold in Naples to be transported to Virginia and Ohio. Rather, the Government showed that Garcia voluntarily participated in the conspiracy even if he was unaware of the location of the ultimate consumer market. Moreover, as we have observed, members of a single conspiracy do not always know its full scope. Banks, 10 F.3d at 1054. The indictment's reference to the resale of the cocaine in Virginia simply established a proper venue for the trial; it did not add an element to the offense of conspiracy.

Furthermore, the Government's chief witness, Castanon, testified that the Florida distribution network in fact funnelled cocaine to Northern Virginia, as well as distributing it locally in Naples, Florida. Once the Government established the existence of the conspiracy, all that was required to convict Garcia was proof of a slight connection between Garcia and the conspiracy. See Brooks , 957 F.2d at 1147.

We conclude that substantial evidence supports the jury's finding that Garcia knew of and voluntarily participated in the charged conspiracy. The Government elicited testimony that Garcia engaged in a continuous course of large-scale cocaine dealing. For example, Castanon testified that, at times, he bought one to three kilograms of cocaine a week from Garcia through two of Garcia's couriers. Castanon explained that Garcia disguised the cocaine in ceramic items from the business that Garcia and his wife operated, B&G Ceramics. Castanon and other coconspirators further testified that on

21

occasion they bought cocaine directly from Garcia at his home and at B&G Ceramics. In total, Castanon estimated that he received at least seventy-four kilograms of cocaine from Garcia during their two-year association. And, Castanon reported that some of the cocaine purchased from Garcia was sent to Virginia through couriers. Finding no deficiency in this evidence linking Garcia to the conspiracy, we affirm.

B.

Morera, in turn, challenges the sufficiency of the evidence because he contends that he never agreed to participate in any unlawful act. The district court, Morera emphasizes, expressly observed that he never "dealt in or distributed personally any of the drugs," (J.A. at 2320), and there was "no evidence that he received any . . . financial benefit" from the conspiracy (J.A. at 2320-21.) Finally, despite evidence that he tipped Castanon to protect him from police detection, Morera stresses that he never betrayed a search warrant, that is, no warrant was executed during periods when Morera tipped the Castanons.

We are unpersuaded by Morera's arguments and find substantial evidence supports the jury's verdict. Although Morera insists that "mere association with bad people who are committing crimes" is insufficient to support a conspiracy conviction, Bell, 954 F.2d at 237, we find that Morera had more than a "mere association" with Castanon. Castanon testified that on four or five occasions, Morera, while in his police uniform, warned Castanon and his wife to take precautions because of impending police activity in their neighborhood. In response to each warning, the Castanons briefly moved to a hotel. Castanon's wife corroborated her husband's testimony. Another coconspirator similarly recounted Morera's two warnings to him to "cool it." This is substantial evidence of Morera's participation in the conspiracy. We will not immunize his role in this conspiracy simply because no warrants issued during the Castanons' hotel stays. In fact, that no warrants issued while the Castanons were in hiding seems to confirm Morera's success in protecting them from detection.

Moreover, a rational jury could conclude that Morera attempted to shield the coconspirators and to facilitate the conspiracy; his warnings

22

thereby advanced the goals of the conspiracy. Regardless of whether Morera personally profited from the conspiracy, once he joined it, Morera became responsible for his coconspirators' actions. See United States v. Boswell, 372 F.2d 781, 783 (4th Cir.) (sharing in the profits is not an element of the offense of conspiracy), cert. denied, 387 U.S. 919 (1967). Having reviewed the testimony against Morera in the Government's favor, we cannot find the evidence of Morera's participation in the conspiracy insufficient.

C.

Finally, Slater argues that we should disbelieve Castanon, a paid informant and convicted conspirator. Castanon was the only witness to link Slater to the conspiracy, and Slater claims that Castanon's testimony was vague, uncorroborated, and insufficient to show Slater's participation in the charged conspiracy.

Castanon testified that Slater purchased one kilogram of cocaine on each of four or five occasions in 1987 from Castanon at his home in Naples. Castanon also recounted Slater's failed attempt in 1988 to purchase a kilogram of cocaine from Castanon in Ohio. To refute Castanon's testimony, Slater testified at trial that he had become the Castanons' friend when Slater once assisted Mr. Castanon with car trouble. Slater told the jury, however, that he never engaged in cocaine transactions with the Castanons.

Even accepting Slater's contention that Castanon's testimony was the only evidence against him, we find that it is substantial evidence supporting the jury's verdict. Testimonial evidence alone may support a conviction. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Moreover, we shall not undertake our own review of Castanon's credibility; that assessment was for the jury to make. See United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983), cert. denied, 465 U.S. 1028 (1984). In convicting Slater, the jury apparently rejected Slater's explanation and accepted Castanon's testimony. We are bound by their determination. See id. Finally, under the "slight connection" standard of Brooks, we find that a rational jury could rely on Castanon's testimony to find that Slater voluntarily participated in the charged cocaine conspiracy.

23

VI.

We come finally to Garcia's challenges to his sentence and the for-feiture of his interest in his residence and business. For the reasons that follow, we affirm.

A.

Garcia assigns as error the district court's calculation of his base offense level. The district court calculated a base offense level of thirty-six because Garcia introduced at least fifty kilograms of cocaine into the conspiracy. See United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(4) (Nov. 1992). According to Garcia, he was responsible for no more than eight kilograms of cocaine because Castanon, Garcia's buyer, was held responsible for only eight kilograms of cocaine for purposes of his sentencing.

The Government bore the burden of showing the quantity of cocaine attributable to Garcia by a preponderance of the evidence. United States v. Mark, 943 F.2d 444, 450 (4th Cir. 1991). Meeting that burden, the Government elicited Castanon's testimony that he bought two to three kilograms of cocaine from Garcia through inter-mediaries on a weekly basis in 1987 and 1988. Castanon estimated that he received a total of between seventy-four and one hundred kilo-grams of cocaine from Garcia. (J.A. at 176.)

Based on that testimony, the district court attributed seventy-four to one hundred kilograms of cocaine to Garcia for sentencing pur-poses. We shall uphold the district court's computation of the quantity of narcotics unless it was clearly erroneous. See Al-Talib, 55 F.3d at 932.

We conclude that the district court did not clearly err in its compu-tation. Garcia is not entitled to receive the same sentence as his coconspirator Castanon. See United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993) (observing that sentencing differentiation among coconspirators is attributable to varying quantities of narcotics for which participants may be accountable). Under the Sentencing Guidelines, moreover, Garcia was responsible for all "reasonably

24

foreseeable acts" in furtherance of the conspiracy, including all reasonably foreseeable quantities of cocaine. U.S.S.G.§ 1B1.3(a)(1)(B); cf. United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993) (noting that, under Sentencing Guidelines, coconspirator is "accountable for the quantity of drugs reasonably foreseeable to him within the scope of his unlawful agreement."), cert. denied, 114 S. Ct. 1086 (1994). In determining the "reasonably foreseeable" quantity when there is no drug seizure, the district court must "approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, comment. (n.12.).

Although the district court could have attributed to Garcia all of the cocaine that he reasonably could have foreseen within the scope of the conspiracy, the district court instead relied on Castanon's testimony regarding Garcia's personal knowledge of at least seventy-four kilograms of cocaine. Garcia thus was held accountable only for his own unlawful deeds, not those of his coconspirators. He therefore has no grounds to object to the district court's lenient computation, and we reject the appeal of his sentence on that ground.

B.

Garcia also challenges the district court's order forfeiting his interest in his home and ceramics business, B&G Ceramics, under 21 U.S.C.A. § 853(a) (West Supp. 1995) as a violation of the Excessive Fines Clause and the Double Jeopardy Clause. Count Eighteen of the Indictment contained an in personam criminal forfeiture allegation, charging that Garcia used his single family residence and business to facilitate the commission of the conspiracy. Returning special verdicts, the jury concluded that Garcia's interest in his home and business were subject to forfeiture.

Section 853(a)(2) provides that any person convicted under the subchapter shall forfeit to the Government "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." Under this section, the Government must prove by a preponderance of the evidence that the property to be forfeited facilitated the crimes for which the defendant was convicted. See United States v. Tanner , 61 F.3d 231, 235 (4th Cir. 1995).

25

Several witnesses testified that Garcia arranged cocaine transactions by telephone from his home and business. Others recounted cocaine transactions with Garcia at his home and business. Still others witnessed quantities of cocaine at Garcia's home or received cocaine from Garcia in ceramic items manufactured at his business. In all, more than a preponderance of the evidence thus supported the jury's conclusion that Garcia's home and business facilitated the drug conspiracy and thus were subject to forfeiture under§ 853(a)(2).

Garcia, however, objects to the forfeiture because, he says, it constitutes an unconstitutionally excessive fine under the Eighth Amendment. Although criminal forfeitures are a form of punishment subject to the limitations of the Eighth Amendment, see id. at 234, only in "rare situations" will a criminal forfeiture under § 853(a)(2) violate the Eighth Amendment, United States v. Wild, 47 F.3d 669, 676 (4th Cir. 1995). Given the gravity of the cocaine conspiracy that Garcia perpetrated, his central role in sustaining the flow of cocaine to Castanon, who then ensured its entrance into the Virginia pipeline over the course of at least two years, we are convinced that forfeiting Garcia's home and business, in addition to fining him $5,000, is not constitutionally excessive.

Garcia also claims that his sentence and the district court's forfeiture order impermissibly constituted two punishments for one offense. See Libretti v. United States, 116 S. Ct. 356, 363 (1995) (noting that criminal forfeiture under § 853 is an "element of the sentence" and plainly intended by Congress to operate as punishment). The Double Jeopardy Clause protects a defendant from multiple punishments for the same offense. See United States v. Halper , 490 U.S. 435, 440 (1989). However, the Double Jeopardy Clause does not prevent the Government from seeking "the full range of statutorily authorized criminal penalties in the same proceeding." Id. at 450. Where, as here, the punishments are imposed during the same proceeding, "the multiple-punishment issue [is] limited to ensuring that the total punishment [does] not exceed that authorized by the legislature." Id. Thus, statutorily authorized cumulative punishments in a single trial by the same judge and jury do not implicate the Double Jeopardy Clause. Having been punished in such a proceeding, Garcia's double jeopardy challenge is meritless.

VII.

For the foregoing reasons, we dismiss that portion of Morera's appeal relating to the district court's denial of his Rule 33 motion for a new trial, and we affirm the Appellants' convictions, Garcia's sentence, and the forfeiture of Garcia's residence and business.

<u>AFFIRMED IN PART AND DISMISSED IN PART</u>

27