**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddie Earl TAYLOR, Defendant–Appellant.**

**No. 92–5274.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1992.

Decided Jan. 26, 1993.

---

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, WV, argued (Hunt L. Charach, Federal Public Defender, on brief), for defendant-appellant.

Victoria Boros Major, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., John C. Parr, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.

OPINION

WILKINSON, Circuit Judge:

In this case, we are asked to decide whether a district court must conduct a second Rule 11 colloquy at a sentencing hearing, if the defendant equivocates about his guilty plea after the initial plea hearing. We hold that a second Rule 11 colloquy is not required, and that the decision how to respond to such equivocation is within the discretion of the district court. In this case, we find that the district court did not abuse its discretion, but instead responded properly by reaffirming at the sentencing hearing that the defendant understood the conditions of his guilty plea and still wished to submit it. Accordingly, we affirm the judgment of the district court.

I.

At a plea hearing on February 11, 1992, appellant Eddie Earl Taylor pled guilty to conspiring to distribute Tylox and diazepam, in violation of 21 U.S.C. § 846. In exchange for Taylor's plea to count one of the indictment, the government agreed to move for dismissal of the remaining four

counts. The plea bargain disavowed any guarantees as to Taylor's ultimate sentence. That matter was left by the agreement within the discretion of the court.

During the plea hearing, the district court conducted a full colloquy in accordance with Fed.R.Crim.P. 11 to confirm the voluntariness of Taylor's plea. There is no dispute that this colloquy satisfied the requirements of Rule 11. Among other questions, the court asked Taylor whether anyone had promised him anything about his ultimate sentence, or had threatened him in any way. Taylor replied "no." The court asked Taylor whether he understood that his sentence was within the discretion of the district court. His reply was "yes." The court also inquired if Taylor understood the 20-year maximum sentence to which he was potentially exposed. He again answered "yes." The court asked Taylor twice whether he understood that if his sentence turned out to be worse than expected, he would still be bound by his guilty plea. Both times, Taylor answered that he did. At the end of the colloquy, the district court announced its finding that Taylor was acting voluntarily, with an appreciation of the consequences, in submitting his guilty plea. Pursuant to U.S.S.G. § 6B1.1(c), however, the court deferred formal acceptance of the plea until the sentencing hearing, so that it could review Taylor's presentence report.

Prior to the sentencing hearing, Taylor wrote a cryptic two-page letter to the district court, in which he expressed his desire to be released from jail so that he could spend time with his terminally ill father. Taylor complained vaguely of broken promises by the government:

> By working with the Government, I was promised a reduced sentence and I was very anxious about this.... I was also told that I needed to plead guilty so that everything would go smoothly and that it would look good on me.... After I plead guilty it seems that everyone turned on me and then I was put in jail.

Taylor concluded his letter by offering to "bust" several doctors who prescribed Tylox, in exchange for a "short release."

On April 13, 1992, at the sentencing hearing, the court questioned Taylor about the letter. The court reminded Taylor that he had disclaimed relying on any promises by the government during the February Rule 11 colloquy. Taylor responded by saying that he had been told his sentence would be reduced if he would help "bust some people." The court then asked Taylor, "do you understand right now that the Court is not under any obligation to give you a reduced sentence because of any promise that was made, or any impression that you may have had that a promise was made?" Taylor responded "Yes, sir, I do." "And you still want me to accept your guilty plea to this charge; is that correct?" "Yes, sir."

The district court proceeded to accept Taylor's guilty plea. It sentenced Taylor to 63 months of prison, and three years of supervised release. In addition, the court fined Taylor $2000, a downward departure from the statutory minimum of $6000, finding that Taylor was "unable financially to pay a fine in a greater amount." Taylor was ordered to pay the $2000 "during his term of incarceration through participation in the Inmate Financial Responsibility Program, with any unpaid balance to be paid through monthly installments during the term of supervised release."

Taylor now challenges on appeal the acceptance of his guilty plea and the imposition of the fine. We will address each issue in turn.

## II.

■ Taylor's primary contention is that the district court erred by not conducting a second Rule 11 colloquy at the April 13 sentencing hearing. Taylor argues that once the court received his letter and began questioning him about it during the sentencing hearing, the court was obliged to conduct another full Rule 11 colloquy concerning the voluntariness of his plea. Its failure to do so, argues Taylor, now entitles him to withdraw his plea.

■ We think that Taylor's argument distorts the essential purpose of the Rule

11 colloquy. The purpose of the colloquy is not to erect a barrier to the completion of a plea agreement; rather, it is "to give recognition to the propriety of plea discussions; to bring the existence of a plea agreement out into the open in court; and to provide methods for court acceptance or rejection of a plea agreement." Fed. R.Crim.P. 11 advisory committee's note (1974 Amendment). By channelling the plea bargaining process into a recorded series of questions and answers, the district judge "not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), *superseded on other grounds by* Fed.R.Crim.P. 11(h). By requiring the defendant to demonstrate his voluntariness *ex ante*, Rule 11 reduces litigation costs *ex post*, and ultimately promotes the fair and efficient entry of his plea.

We therefore see no reason why the district court should have been required to repeat all the questions it had asked Taylor during the February Rule 11 colloquy. Taylor's intervening equivocation did not invalidate each and every one of his original responses. At most, it cast doubt on whether he truly understood that the district court had no obligation to reduce his final sentence on account of his plea. At the April 13 sentencing hearing, the district court responded appropriately to this doubt by reminding Taylor, again, that it had no such obligation, and by reaffirming that Taylor wanted to go through with his guilty plea. For the purposes of verifying that Taylor's plea was voluntary, and of expediting our review of this finding, nothing more was required of the district court.

In this sense, then, the Rule 11 colloquy has a burden-shifting effect regardless of when the district court formally accepts the plea. Prior to sentencing, the defendant may withdraw his guilty plea only if he demonstrates a "fair and just reason" for doing so. Fed.R.Crim.P. 32(d). Even then, "[t]he decision to permit the defendant to withdraw a plea is discretionary, and our review is limited to the question of whether the district court abused its discretion." *United States v. Lambey*, 974 F.2d 1389, 1393 (4th Cir.1992) (en banc). *See also United States v. McHan*, 920 F.2d 244, 246–47 (4th Cir.1990); *United States v. DeFreitas*, 865 F.2d 80, 81–82 (4th Cir.1989). Analogously, after the district court concluded its Rule 11 colloquy and found that Taylor was pleading voluntarily, the burden shifted to Taylor to put at issue his answers during that colloquy. The district court had no duty to inquire further, except to respond to the specific issue Taylor raised in his letter about the sentence he would receive. How the court responded to this letter was a matter within its discretion. In this case, far from abusing that discretion, the court took exemplary steps to reaffirm the voluntariness of Taylor's plea.

### III.

■ Taylor's second challenge is to his $2000 fine. Under 18 U.S.C. § 3572(a), a district court is required to consider certain factors—including the defendant's ability to pay—before imposing a fine. We have held that the district court must "make specific fact findings on these factors," *United States v. Harvey*, 885 F.2d 181, 182 (4th Cir.1989), and have vacated fines for which the district court failed to make such findings. *Id.* at 182–83 (vacating $100,000 fine); *United States v. Shulman*, 940 F.2d 91, 94–95 (4th Cir.1991) (vacating $10,000 fine under *Harvey*); *United States v. Arnoldt*, 947 F.2d 1120, 1127 (4th Cir.1991) (vacating $5000 fine under *Harvey*). Here Taylor argues that the district court failed to make a specific finding that he could pay even the $2000, and thus erred in imposing any fine at all.

We are unpersuaded. To start, we note that Taylor failed to object to the fine at his sentencing hearing. If he had a problem with his fine, the sentencing hearing was the appropriate time for him to raise it, for then it might easily have been cured. In any event, the district court did make a specific factual finding about Taylor's fi-

nancial status. It found that Taylor was "unable financially to pay a fine in a greater amount" than $2000, and accordingly departed downward from the $6000 minimum that Taylor was liable to pay under the Sentencing Guidelines. The presentence report—itself based on a Personal Financial Statement completed by Taylor—gave documented support for this downward departure. The report stated that Taylor had "no income, assets, or financial obligations," but would be able "to earn income and make payments through the Inmate Financial Responsibility Program which could be applied toward fine payments."

Taylor protests even the $2000 fine, however, because neither the district court nor the presentence report stated in so many words that he could earn the $2000 while he was in prison. This argument embraces technical nicety at the expense of common sense. The courts are presumed to have some passing familiarity with the conditions of confinement at a federal prison, including how much prisoners get paid. Here the district court bent over backwards in its sensitivity to Taylor's financial plight by imposing no more than a $2000 fine, which Taylor will have more than five years in prison and three years of supervised release to pay. Requiring the court to jump through another hoop on remand would be a waste of time and resources.

### IV.

The judgment of the district court is therefore

AFFIRMED.