**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rosa FRANCISCO, Defendant–Appellant.**

No. 93–5594.

United States Court of Appeals,
Fourth Circuit.

Argued July 20, 1994.

Decided Sept. 13, 1994.

**ARGUED:** Gregory Davis, Asst. Federal Public Defender, Greensboro, NC, for appellant. Jerry Wayne Miller, U.S. Atty., Office of the United States Atty., Asheville, NC, for appellee. **ON BRIEF:** William E. Martin,

Federal Public Defender, Greensboro, NC, for appellant.

Before LUTTIG and WILLIAMS, Circuit Judges, and ANDERSON, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

PER CURIAM:

Appellant Rosa Francisco was convicted of conspiracy to possess with the intent to distribute and to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 846 (1988), and unlawful possession with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). Francisco argues that the district court committed several reversible errors, including: (1) allowing the Government to present evidence of her 1986 conviction for misprision of a felony; (2) allowing hearsay testimony; (3) allowing the prosecutor to make unfair and prejudicial comments during his closing argument; (4) failing to provide the parties with notice of its tentative findings; and (5) failing to consider her ability to pay when it imposed a fine. Finding no error, we affirm Francisco's conviction and sentence.

## I.

On November 23, 1990, Richard Wilson was stopped at the airport in Charlotte, North Carolina, and was found to be carrying approximately two kilograms of cocaine. Following his arrest, Wilson told officers that he was delivering the cocaine to Asheville, North Carolina, for Francisco. Wilson agreed to cooperate with the officers, and, thereupon, continued his trip to Asheville to deliver the cocaine. Once in Asheville, Wilson contacted Francisco, who was in Greenville, South Carolina, and Francisco told him that someone would meet him to buy the cocaine. Later, Ronald Winslow Mackey arrived and stated that he was there to purchase the cocaine. Wilson and Mackey called Francisco, who directed them to exchange the cocaine for money. Wilson and Mackey were then arrested, and Francisco remained a fugitive until her arrest on February 12, 1991.

On December 5, 1990, Francisco, Wilson, and Mackey were charged in a two-count indictment. On July 16, 1991, Francisco was tried before a jury. When the jury was unable to reach a verdict, the district court declared a mistrial. Thereafter, on January 7, 1993, Francisco was retried before another jury, which found her guilty on both counts. At the sentencing hearing on July 14, 1993, Francisco was sentenced to 160 months imprisonment and fined $2,000.

## II.

Francisco first argues that the district court erred in allowing the Government to present evidence of her guilty plea to misprision of a felony in September 1986. She asserts that misprision of a felony involves the failure to report a crime, not involvement in the crime itself, and, therefore, her conviction was not admissible under Fed.R.Evid. 404(b) because it was not sufficiently similar to the instant charge to be relevant. We disagree and find that the evidence of her prior conviction was properly admitted.

"It is well-settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the district court, not to be reversed on appeal absent an abuse of discretion." *Martin v. Deiriggi,* 985 F.2d 129, 137 (4th Cir. 1992). "[A]ny error in [the] admission or exclusion [of evidence] is subject to the harmless error test." *United States v. Morison,* 844 F.2d 1057, 1079 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988). Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Francisco argued at trial that her involvement with Wilson concerned renovations he was overseeing at her house. In response, the Government introduced testimony of Agent Brian Collier regarding Francisco's prior drug-related activity.[1] Although Francisco pled guilty to misprision of a felony in 1986, she was actually charged with conspiracy to distribute cocaine, and therefore, the conviction was connected to her involvement in that drug offense. Given the defense theory, admission of Francisco's prior drug-related activity was essential to show preparation, knowledge of drug dealing, and the absence of mistake or accident regarding the present drug conspiracy. Moreover, the district court properly instructed the jury as to the limited use of the evidence prior to admission.[2] We generally follow the presumption that the jury obeyed the limiting instructions of the district court. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions."); *United States v. Ince*, 21 F.3d 576, 584 (4th Cir.1994) ("[W]e recognize the presumption of cure by a court's instruction.").

### III.

Francisco next contends that the district court erred in allowing Wilson to provide hearsay testimony at her trial. Wilson testified that Francisco wanted him to find someone to travel with her son, Richard, to take drugs to Asheville, North Carolina. Wilson stated that Richard told him that he was unwilling to go to Asheville. Wilson also

testified that he then got one of his workers to take the drugs. However, Wilson stated that his worker reported that he was unable to make the trip because guards at the airport wanted to search his bags. Francisco argues that Wilson's testimony concerning statements made by Richard and his worker were hearsay and, therefore, should have been excluded. We find Francisco's claim to be meritless.

■ Wilson's testimony regarding statements made by Richard and his worker was admissible pursuant to Fed.R.Evid. 801(d)(2)(E), which states: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Here, the statements were made by coconspirators and involved the means and methods of transporting the cocaine to Asheville. Therefore, the statements were made in furtherance of the conspiracy. Accordingly, Rule 801 applies, and Wilson's testimony was not hearsay.

### IV.

Francisco also contends that the district court erroneously allowed the prosecutor to make unfair and prejudicial comments during his closing argument. The Government recorded the telephone conversations between Francisco and Wilson. However, the recording equipment was not working properly during the first call, and only Wilson's portion of the conversation was recorded. Nonetheless,

---

1. Agent Collier testified that, pursuant to a 1986 drug investigation, an agent attempted to place an order for cocaine with the target of the investigation. However, Francisco answered the telephone, and he ordered the cocaine through her, using a coded language. Agent Collier further testified that the transaction led to the arrest of the target. Thereafter, during the defense's case in chief, Francisco expounded upon the 1986 incident. She brought out, for the first time, the fact that she was indicted for drug conspiracy and pled guilty to misprision of a felony as a result of the investigation. On cross-examination, the Government then properly questioned Francisco regarding the prior conviction for impeachment purposes pursuant to Fed.R.Evid. 608.

2. The instruction provided, in part, as follows:

[Y]ou must not consider evidence of any such prior similar acts in deciding if the defendant committed the acts charged by the Government in this case. However, you may consider this evidence for another and very limited purpose.... [Y]ou may consider the evidence of this prior or purportedly similar act or acts committed on other occasions to determine whether the defendant had the state of mind or intent necessary to perform the acts contended by the Government in this case, or ... had a motive or opportunity to perform or commit the acts alleged ... or whether the defendant acted according to a plan....

(J.A. at 153.)

A similar instruction was given to the jury as part of the district court's jury charge at the close of the evidence. (R. at 428–49.)

during closing arguments, the prosecutor displayed a transparency of Wilson's recorded statements in the first conversation that included what the prosecutor believed were Francisco's responses.

We must determine whether the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

■ The test for reversible prosecutorial misconduct has two elements: (1) whether the prosecutor's remarks or conduct was improper, and (2) whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive her of a fair trial. *United States v. Mitchell,* 1 F.3d 235, 240 (4th Cir.1993). We find Francisco's argument to be meritless.

■ The prosecutor's comments were not improper. It is undisputed that closing argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence. *See United States v. Brainard,* 690 F.2d 1117, 1122 (4th Cir.1982) (stating that closing arguments may include reasonable inferences from the evidence), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). In the instant action, the prosecutor clearly acted within such bounds. Francisco claimed that her side of the conversation related to Wilson's work remodeling her house. However, the great weight of the evidence, including Wilson's recorded responses during the conversation in question and the other calls that were recorded in their entirety, demonstrated that Francisco and Wilson were discussing delivery of cocaine in Asheville. Thus, relying on such evidence, the prosecutor made reasonable inferences regarding Francisco's statements during the first call.

■ Moreover, we find that the limiting instruction given by the district court[3] eliminated any danger of the prosecutor's comments prejudicially affecting Francisco's substantial rights so as to deprive her of a fair trial. As stated above, we follow the presumption that the jury obeyed the district court's limiting instructions.

## V.

■ Francisco also contends that the district court erred in failing to provide the parties with notice of its tentative findings. The Presentence Report (PSR) did not recommend an enhancement for Francisco's role in the offense or for obstruction of justice. The Government, therefore, filed an objection asserting that Francisco should receive a four-level enhancement for her role as organizer or leader, *see* U.S.S.G. § 3B1.1(a),[4] and a two-level enhancement for obstruction of justice for her perjurious testimony at trial, *see* U.S.S.G. § 3C1.1. Because the district court did not provide the parties with notice of its tentative findings,[5] Francisco argues

3. The limiting instruction provided as follows:

Members of the Jury, the words that Mr. Miller [the assistant United States Attorney] has entered on here, of course, are not evidence in the case anymore than the other written portions of the transcript. You recall the tapes themselves were the only evidence presented and what you hear on those tapes is the evidence in the case from which you're required to find the facts.

The attorneys, however, are entitled to argue what they think the actual evidence in the case means and how it all fits together. So Mr. Miller is allowed to add those words on his own as a part of his argument.

(J.A. at 270.)

4. United States Sentencing Commission, *Guidelines Manual* (Nov.1992).

5. Section 6A1.3 of the Sentencing Guidelines provides as follows:

(a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding the factor. In resolving any [such] dispute . . ., the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

(b) The court shall resolve disputed sentencing factors in accordance with [Fed.R.Crim.P. 32(a)(1)], notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

that the case should be remanded for resentencing. We disagree.

It is undisputed that tentative findings are not always required. *United States v. Osborne,* 931 F.2d 1139, 1146–49 (7th Cir.1991); *United States v. Walker,* 901 F.2d 21, 22 (4th Cir.1990). In *Walker,* 901 F.2d at 22, this court stated as follows:

> The Guidelines do not require tentative findings in all cases. In appropriate cases, tentative findings are intended to help facilitate resolution of factual objections before the sentencing hearing, if possible.... The district judge received defendants' objections in advance of the hearing, provided the parties an adequate opportunity to address those objections ... and resolved the disputed factors in accordance with Rule 32(a)(1), Fed.R.Crim.P., before imposition of sentence.

Here, an addendum to the PSR set forth both the Government and Francisco's objections to the PSR, as well as their respective responses. Moreover, at the sentencing hearing, both sides were able to argue their positions. Finally, the district court properly addressed and resolved each disputed issue. Under these circumstances, the fact that the district court did not issue tentative findings does not amount to reversible error.

## VI.

■ Finally, Francisco challenges her $2,000 fine, arguing that the district court erred in failing to consider her ability to pay. She relies on 18 U.S.C.A. § 3572(a) (West Supp.1994), which sets forth several factors to be considered by the district court "[i]n determining whether to impose a fine, and the amount, time for payment, and the method of payment of a fine...." It is well-established that district courts are required to make specific factual findings regarding § 3572 factors because "such findings are ... essential to effective appellate review of the fines imposed," *United States v. Harvey,* 885 F.2d 181, 182–83 (4th Cir.1989), and failure to make any findings is grounds for vacation of the fine. *United States v. Arnoldt,* 947 F.2d 1120, 1127 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992); *United States v. Shulman,* 940 F.2d

91, 95 (4th Cir.1991); *Harvey,* 885 F.2d at 183. However, we find no error regarding the imposition of the fine in this case.

In *United States v. Taylor,* 984 F.2d 618, 622 (4th Cir.1993), this court rejected the defendant's claim that the district court erred in failing to make a specific finding that the defendant could pay his $2,000 fine. The defendant was subject to a statutory minimum $6,000 fine, but the district court downwardly departed by $4,000. We relied on several factors in rejecting the defendant's claim in *Taylor,* including the fact that (1) the defendant failed to object to the fine at the sentencing hearing, (2) the district court specifically found the defendant " 'unable financially to pay a fine in a greater amount' than $2,000," and (3) the PSR stated that the defendant had " 'no income, assets, or financial obligations,' " and could earn money and " 'make payments through the Inmate Financial Responsibility Program.' " *Id.* at 621–22. All of these factors are also present in this case.

■ Francisco failed to object to the fine imposed by the district court at the sentencing hearing, which "was the appropriate time for [her] to raise" any complaint. *Id.* at 621. Moreover, the district court did make specific factual findings concerning Francisco's financial condition. Although the fine range was $12,500 to $2,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3) and 21 U.S.C. § 841(b)(1)(B)(ii)(II), the district court fined Francisco $2,000, stating that "[t]he fine is ... below the guideline range because of the defendant's inability to pay." (J.A. at 19.) The district court also allowed the balance of the fine "to be paid on a schedule approved by [the] Probation Office," and waived the interest requirement because of Francisco's "[in]ability to pay interest." (J.A. at 18.) The PSR also supports the district court's imposition of a $2,000 fine. The report states that Francisco "has no assets or liabilities," and that although she "will [not] be able to make a substantial fine payment at the time of sentencing, ... should the Court impose a fine, [Francisco] could begin making payments while incarcerated through the Bureau of Prisons Inmate Financial Responsibility Program." (J.A. at 342.)

Finally, in *Taylor*, this court emphasized the fact that the district court was sympathetic to the defendant's financial predicament as evidenced by its imposition of a mere $2,000 fine, which the defendant could pay during her sentence of sixty-three months in prison and three years of supervised release. *Id.* at 620, 622. Here, Francisco was also only fined $2,000, which she may pay over her thirteen years in prison and five years of supervised release. Given these factors, we find that the district court properly complied with its obligations under § 3572.

### VII.

For the foregoing reasons, we affirm Francisco's conviction and sentence.

*AFFIRMED.*