**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5303

WILLIAM ALSTON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CR-94-269-A)

Argued: May 8, 1996

Decided: October 7, 1996

Before WIDENER and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Claude David Convisser, Alexandria, Virginia, for Appellant. Gerard Joseph Sexton, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Randy I. Bellows, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The defendant, William Alston, appeals his conviction for armed robbery of a federal credit union in violation of 18 U.S.C. § 2113(a) and (d) on the grounds of insufficient evidence and prosecutorial misconduct. He also claims the district court erred in denying his motion for a new trial based on newly discovered evidence. We affirm.

Alston's first trial resulted in a mistrial because the jury was unable to reach a unanimous verdict. Following a second trial the jury returned a verdict of guilty.

Alston first claims that the evidence identifying him as the perpetrator was insufficient to support the conviction and that he did not have time to commit the robbery and reach his workplace at about 3:00 p.m. Along with other evidence, the record shows that the police officer who first spotted the robbers' getaway car picked Alston out of a police lineup the night of the robbery and identified Alston at trial as the man who exited the back seat of the car and shot at him (the officer). The officer testified that he returned fire and Alston fled. The fugitive's weapon was later found in a yard about 50 yards down the street in the path of Alston's flight. The other occupants of the Alston car, codefendants William Johnson and Janeen Jackson, escaped and were arrested shortly thereafter by other officers. A fingerprint on one of the credit union's metal cash boxes found in the trunk of the car was positively identified as belonging to Alston. The parties stipulated that it took 39 minutes to go from the place Alston exited the getaway car and shot at the police officer to Alston's workplace by Metrorail or by driving. The evidence showed that the robbery occurred around 1:45 to 1:50 p.m. in Falls Church, Virginia. A credit union employee followed the getaway car for about four or five minutes and recorded the license number of the car before it turned to enter a shopping center. The employee straightaway reported the

2

license number to a police officer a couple of blocks away. The Alston car was picked up on the Fourteenth Street Bridge at around 2:08 p.m. by a police officer who followed the car approximately five minutes before it stopped and the man whom the officer identified as Alston exited the car, shot at him, and fled. Thus Alston would have had at least 45 minutes to reach his workplace by car or by Metrorail. Based on this evidence, viewed in the light most favorable to the government, we conclude that there is substantial evidence to support the verdict of guilty. Glasser v. United States, 351 U.S. 60, 80 (1942).

Alston next claims that his right to present witnesses on his behalf was violated because the prosecutor's threat of perjury charges intimidated a critical witness from testifying. The record indicates that the prosecutor requested the court to appoint counsel for codefendant Janeen Jackson because the government had evidence that Jackson had perjured herself in Alston's previous trial when she testified that she did not know Alston. The jail's visitor log showed that Miss Jackson had visited Alston on two occasions, one time with codefendant Johnson's girlfriend, Diane Cooper, and another time with Alston's sister, Sabrina Alston. Miss Jackson's dilemma was that if she testified at Alston's second trial that she did know Alston, she could be said to admit that she had perjured herself at the earlier trial. If she testified a second time that she did not know Alston, she could be subject to a second perjury count. On the advice of her appointed counsel, Miss Jackson invoked the Fifth Amendment and did not testify at Alston's trial. Her testimony at the prior trial was read into the record, she being unavailable under Fed. R. Evid. 804(a)(1).

A defendant's right to present witnesses in his defense is a fundamental element of due process. Washington v. Texas, 388 U.S. 14, 19 (1967). Improper intimidation of a witness may violate a defendant's due process if it amounts to "`substantial government interference with a defense witness' free and unhampered choice to testify.'" United States v. Saunders, 943 F.2d 388, 392 (4th Cir. 1991), cert. denied, 502 U.S. 1105 (1992) (citations omitted). Reversible prosecutorial misconduct occurs when the prosecutor's conduct is improper and such conduct deprives the defendant of a fair trial. See United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994), cert. denied, 115 S. Ct. 950 (1995).

3

Alston depends on United States v. MacCloskey , 682 F.2d 468 (4th Cir. 1982), and United States v. Teague, 737 F.2d 378 (4th Cir. 1984). The district court held both of those cases to be distinguishable, and we agree. MacCloskey was a case under circumstances remarkably similar to those present here, in which a witness had declined to testify under at least an implied threat of perjury if she lied, her sought-for testimony being inconsistent with that at a previous voir dire hearing in the case. The district court was reversed because it did not hold the witness unavailable and permit the reading of the voir dire testimony on behalf of the defendant. In the case at hand, the testimony of Miss Jackson at the previous trial was read to the jury, so MacCloskey has no application. Teague was a similar case in which the attorney for a witness was advised that if the witness perjured himself he would be hearing from the U. S. Attorney's office and his pretrial diversion agreement would be revoked. We held that the action of the U. S. Attorney was harmless, and also reasoned that the district court was satisfied that the witness had not been threatened by any federal agent or attorney under a warning similar to that given here. Therefore, Teague has no application.

We note in passing that it may be doubted that MacCloskey has survived Bank of Nova Scotia v. United States , 487 U.S. 250 (1988), in which the Court held that the government had not attempted to manipulate a witness's testimony when the U. S. Attorney had told the witness's attorney that if the witness "testified for Mr. Kilpatrick all bets were off." The defendant's attorney had construed the statement that his client would be validly subject to prosecution for perjury rather than having immunity withdrawn, the same condition which appertains here.

We should also remark that the district court considered it quite proper to ask for the appointment of an attorney instead of letting the witness unwarily walk into a perjury trap, and we agree.

The government impeached Miss Jackson's testimony given at Alston's first trial with evidence indicating that she had visited Alston when he was in jail. Alston claims that because Miss Jackson refused to testify in person, he could not call upon her to explain or rebut the state's evidence. In his motion for a new trial, Alston proffered that Miss Jackson would have testified that on October 4, 1994, she did

4

not visit Alston, but rather Johnson who happened to be in the same cellblock with Alston. Alston claims Miss Jackson would have testified that her only visit to him was on November 11, 1994 when she accompanied Alston's sister, Sabrina Alston, a Washington D.C. police officer, for the purpose of identifying whether he was the person with herself and Johnson in the getaway car. Alston asserts that this and the testimony of Johnson's brother that he left Miss Jackson at the jail, and two jail employees that the policy of the jail is to allow one set of visitors per night is newly discovered evidence which entitles him to a new trial.

We disagree. The proffered evidence from these three witnesses was available to Alston at the time of trial.

The judgment of conviction is accordingly

AFFIRMED.

5