**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

TREVOR M. HENRY, a/k/a Ivory
Hardy,
Defendant-Appellant.

No. 96-4951

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CR-95-183)

Argued: March 6, 1998

Decided: June 19, 1998

Before WIDENER and WILKINS, Circuit Judges, and
MOON, United States District Judge for the
Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jane Moran, Williamson, West Virginia, for Appellant.
Miller Allison Bushong, III, Assistant United States Attorney,
Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A.
Betts, United States Attorney, Charleston, West Virginia, for Appel-
lee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Trevor M. Henry ("Henry") seeks reversal of his convictions of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846 and aiding and abetting possession with intent to distribute cocaine base in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). He raises five issues on appeal: (1) whether the district court properly found him competent to stand trial, (2) whether the district court properly denied his motion to suppress evidence, (3) whether the district court properly admitted testimony regarding his foreign accent, (4) whether the United States committed prosecutorial misconduct, and (5) whether the district court properly denied his motion for judgment of acquittal. Finding no reversible error, we affirm.

I.

On March 17, 1995, at 9:55 p.m. and 10:23 p.m., informant John Addison ("Addison") made two controlled buys of cocaine base from an apartment at 1703 Rear Tenth Avenue in Huntington, West Virginia. Each time Addison knocked on the door of the apartment, and someone inside uncovered a slot in the door and said only, "Money." Each time Addison passed a marked fifty dollar bill through the slot. Then a spoon containing crack cocaine was extended to him through the slot.

About an hour after the second buy, the police officers supervising Addison's buys applied for a search warrant. They had not been able to see the numerical address of the building because of poor lighting. Instead, they consulted a street directory and concluded incorrectly that the address was 1701 Rear Tenth Avenue. Officer Robert Martin typed a statement on a form he titled "Affidavit for Search Warrant." He did not sign the affidavit, but beneath his statement he typed his

2

name, "Huntington P.D.," and the date. Officer Hall filled out the search warrant form. The magistrate read Officer Martin's unsigned affidavit, administered the oath to him, and then issued the search warrant, signing the form filled out by Officer Hall. J.A. at 31-32, 49-53.

At about 1:10 a.m., the officers returned to the apartment where the drugs had been purchased. They knocked several times and announced they were police with a search warrant. They heard "running feet" and a commotion in the apartment, but no one answered the door. They broke down the door. They observed water running full force in the bathroom. They continued to hear persons running on the floor below them and also heard the sound of breaking glass. The police apprehended three suspects, including Henry. On the ground outside the apartment building, and amid broken glass from a smashed window, the police found $970, including the marked bills from the earlier controlled buys. Henry had $384 on his person. Additionally, the police found several rocks of crack cocaine on a glass plate with a spoon. Henry's fingerprints were on the plate.

More than a month after Henry's arrest, on May 26, Corporal Rick Eplin ("Eplin") took a second set of fingerprints from Henry at the police station. He asked Henry where he was born, and Henry answered that he had been born in Jamaica. Although Henry had previously been given a Miranda warning, the district court suppressed the statement because Eplin had not given Henry a new Miranda warning before questioning him. However, at trial the court allowed Eplin to testify that he had heard Henry's accent while taking his fingerprints and recognized it as Jamaican. Eplin testified that he was familiar with a Jamaican accent because one of his neighbors who is Jamaican speaks with the same accent.

Addison testified that the word "money" had been spoken to him with a Jamaican accent. On the night of the controlled buys, however, Addison told Officer Martin that the person who passed the cocaine to him "had like a Nigerian accent, some kind of accent." J.A. at 47.

II.

Henry argues that he was not competent to stand trial because of his inability to communicate with counsel or the court regarding his

3

case. The test of mental competency is "whether[a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (citation omitted). The district court found that Henry was competent to stand trial. Whether a defendant is competent to stand trial is left to the sound discretion of the trial court, and its determination will not be set aside on appeal unless clearly "arbitrary or unwarranted." Hall v. United States, 410 F.2d 653, 658 (4th Cir.), cert. denied, 396 U.S. 970 (1969).

Dr. Robert B. Alexander ("Dr. Alexander") who treated and evaluated Henry, reported to the district court that:

> Mr. Henry is not suffering from a mental disease or defect. He does understand the roles of judge, jury, prosecutor, and defense attorney. He also understands the concept of the plea bargain. He has only average intelligence, but a good memory and has shown competency in the area of legal research and in providing explanations for damaging evidence. He has as much working knowledge as an average citizen. He is willing to assist his attorney, and has formed a fairly good working relationship. Although there are certainly disagreements, and a stubbornness as demonstrated by his focus on a defense not seen as viable by his attorney, this is within the normal limits. These observations led the undersigned to form the opinion that Mr. Henry is legally competent to assist in his defense.

J.A. at 100.

Dr. Alexander's statement acknowledges the working difficulties of Henry and his attorney. These difficulties do not undermine the doctor's opinion that Henry was competent to assist in his defense. The Dusky standard does not require that a defendant approve of the tactical methods of his counsel, but that a defendant have a rational understanding in consulting with his attorney and a rational as well as factual understanding of the proceedings against him. See Dusky, 362 U.S. at 402. The record does not show that the trial court abused its discretion in finding that Henry was competent to stand trial.

4

III.

Henry asserts that the district court erred in refusing to suppress evidence seized under the allegedly invalid search warrant. He contends that the search warrant is invalid because the officers did not have probable cause, the warrant application contained inaccuracies, the officer did not sign the affidavit he swore to, and the magistrate was not detached and neutral. We review the district court's factual findings underlying its legal conclusions for clear error and its legal conclusions de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 506 U.S. 926 (1992).

A.

The Fourth Amendment to the Constitution requires that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or thing to be seized." U.S. Const. amend. IV. A search warrant must be issued by a neutral and detached magistrate. United States v. Clyburn, 24 F.3d 613, 616 (4th Cir.), cert. denied, 513 U.S. 907 (1994).

B.

The affidavit stated that Addison twice bought drugs in controlled buys at the apartment. Officer Martin applied for a warrant within an hour of the second buy. J.A. at 48. Officer Martin's statement marked "Affidavit for Search Warrant" describing the information received from a credible confidential informant regarding drug activity at the apartment and two controlled drug buys at the apartment which had yielded a substance that had tested positive for crack cocaine, affirmed under oath about an hour after the buys, provided probable cause for the magistrate to believe that drugs were still on the premises at the time she issued the warrant. See United States v. Leon, 468 U.S. 897, 913-15 (1984).

C.

Henry argues that the magistrate served only as a "rubber stamp," but he fails to offer any evidence that the magistrate was not neutral

5

and detached. The evidence is to the contrary. The magistrate first read the affidavit provided by Officer Martin as he personally stood before her. She had him swear to his typed statements, and only then did she issue the search warrant which had been filled out by Officer Hall, one of Martin's companion officers. J.A. at 49.

D.

Henry argues that the warrant was invalid because the officers cited the wrong address in their warrant application. Although the street number was not accurate, the description of the house in the search warrant was sufficient to direct the officers to the correct house, the one at which Addison had made the drug purchases. The particularity requirement of the Fourth Amendment tests whether"the officer with a search warrant can with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925) (citations omitted). "An erroneous description in the warrant, however, does not necessarily invalidate a warrant and subsequent search." United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988). The scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe it may be found." United States v. Ross, 456 U.S. 798, 824 (1982). Limitations on the execution of search warrants should be examined in light of "the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process." Maryland v. Garrison, 480 U.S. 79, 87 (1987). Moreover,"when an officer acts in good faith reliance on a facially valid warrant, the purpose of the exclusionary rule would not be furthered by suppression of relevant and probative evidence." Owens, 848 F.2d at 464 (discussing United States v. Leon, 468 U.S. 497 (1984)). No Fourth Amendment violation occurred because the description was set out with sufficient particularity to identify the premises to the officers: it targeted the specific apartment the searching officers identified as the one from which drugs had been sold, and the officers indeed searched the premises for which probable cause existed. The officers acted in good faith and did not realize during the course of executing the warrant that they had misstated the apartment number in applying for the warrant.[1]

_____

[1] Henry does not allege, and it does not appear from the record, that the officers realized their mistake while executing the warrant. See Appellant's Brief at 31-34; J.A. at 258-306.

6

E.

Henry also argues that the affidavit was not proper because it was not signed, citing the Federal Rules of Criminal Procedure and West Virginia Rules of Criminal Procedure. Even if these rules required a signed affidavit, they would not control in this case. Here, a local police officer, not federal agents, asked for the warrant. The evidence was being offered in a federal proceeding. Therefore, neither the warrant limiting strictures of the Federal Rules of Criminal Procedure nor the West Virginia Rules of Criminal Procedure apply. Clyburn, 24 F.3d at 616. Instead, the limits set forth by the Fourth Amendment safeguard the defendant's rights. Id. The Warrant Clause does not require a signed and sworn affidavit, but only that probable cause be supported by oath or affirmation. Clyburn, 24 F.3d at 617. Because the officer swore to the information in the presence of the magistrate, the warrant is valid.

IV.

The district court admitted Eplin's testimony regarding Henry's accent, which Eplin heard when he took Henry's fingerprints. Henry claims this testimony unconstitutionally prejudiced him and should have been suppressed. "The sound of a defendant's voice, even if heard during privileged communications, is not itself testimonial, and therefore is not protected by the Fifth Amendment privilege against self-incrimination." United States v. Oriakhi , 57 F.3d 1290, 1299 (4th Cir. 1995) (citing United States v. Dionisio, 410 U.S. 1, 8 (1973); Doe v. United States, 487 U.S. 201, 210 (1988)). The sound of Henry's voice and his accent are physical evidence and are not shielded by the Fifth Amendment privilege against self-incrimination. See Pennsylvania v. Muniz, 496 U.S. 582 (1990). **2**

_____

**2** In passing, Henry contends that his Sixth Amendment right to counsel in an interrogational setting was violated by Eplin's actions. Appellant's Br. at 38. Henry does not appear to have offered this argument for the district court's consideration. In any case, the contention is meritless. The Sixth Amendment right to counsel is intended to protect the layman at critical confrontations with the government after the initiation of the adversary process with respect to a particular crime. United States v. Gouveia, 467 U.S. 180, 189 (1984). Corporal Eplin's identification of Henry's accent during fingerprinting was not a critical stage of the proceedings. Oriakhi, 57 F.3d at 1299.

Henry also contends that because Eplin was not a linguist, the trial court erred in admitting his opinion regarding the origin of Henry's accent. Lay witnesses' opinions must be rationally based on the witnesses' perception and helpful to the determination of a fact in issue. Fed. R. Evid. 701. A trial court's admission of evidence is a matter of discretion and should be affirmed absent a clear abuse of discretion. United States v. Webster, 639 F.2d 174 (4th Cir.), cert. denied, 454 U.S. 857 (1981). Eplin explained the basis for his opinion that the accent was Jamaican--he had a Jamaican neighbor. This provided a rational basis for his testimony which was helpful to the fact finder in determining if the person who passed the drugs was Jamaican. Thus, the trial court did not abuse its discretion.

V.

Henry's allegation of prosecutorial misconduct is based on the prosecutor's introduction of testimony that the police attempted to record the controlled buys. Henry's counsel objected when the Assistant U.S. Attorney directed his witness toward discussion of the attempt to tape the buys. During a sidebar conference, the Assistant U.S. Attorney and Henry's attorney came to an agreement that it was permissible for the Assistant U.S. Attorney to introduce testimony that an unsuccessful attempt was made to tape the drug buys.

The Assistant U.S. Attorney kept his witness's testimony within the framework of this agreement and Henry's attorney did not further object. J.A. at 253-60. The test for reversible prosecutorial misconduct requires the prosecutor's conduct to have been improper and such conduct must have prejudicially affected defendant's substantial rights so as to deprive defendant of a fair trial. United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994). The record does not support the claim that the Assistant U.S. Attorney was guilty of misconduct.

VI.

In considering Henry's motion for judgment of acquittal after a jury verdict of guilty, we are required to view the evidence in the light most favorable to the government to see whether any rational trier of

fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Construing the evidence in the light most favorable to the government, Addison made two controlled buys at the residence in which Henry and two others were arrested within three hours. The person who sold the drugs to Addison had a Jamaican accent. Of the three individuals the police found in the apartment, only one, Henry, had a Jamaican accent. The prior statement by Addison that the accent was Nigerian went to Addison's credibility, which was for the fact finder to resolve. Henry attempted to flee along with the others when the police arrived. Flight from the scene of a crime may indicate consciousness of guilt, which is evidence of illegal conduct. See, e.g., United States v. Ellis, 121 F.3d 908, 926 (4th Cir. 1997), cert. denied, 118 S.Ct. 738 (1998). When arrested, Henry had $384 on his person. Henry's fingerprints were found on the glass plate with several grams of crack cocaine. All of these circumstances were sufficient for a rational fact finder to believe beyond a reasonable doubt that Henry conspired to distribute and possess with intent to distribute cocaine base and aided and abetted the possession with intent to distribute cocaine base. The district court properly denied the motion for acquittal.

Finding no reversible error, we affirm.

AFFIRMED

9