**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4905**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

CHENOMUSA N-JIE,

              Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:05-cr-00064-FPS)

Argued:  March 19, 2008           Decided:  May 9, 2008

Before DUNCAN, Circuit Judge, HAMILTON, Senior Circuit Judge, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Edward Lee Gillison, Jr., GILLISON LAW OFFICES, Weirton, West Virginia, for Appellant.  Randolph John Bernard, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON BRIEF:** Sharon L. Potter, United States Attorney, David J. Perri, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Chenomusa N-Jie ("N-Jie") appeals his conviction and sentence for conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a), 846. N-Jie challenges his conviction by contending that the district court failed to conduct an evidentiary hearing and award a new trial on account of juror bias, and failed to award a new trial on account of prosecutorial vouching. N-Jie challenges his sentence by contending that the district court improperly applied a two-level enhancement for obstruction of justice pursuant to U.S. Sentencing Guidelines Manual (USSG) § 3C1.1 (2006). For the following reasons, we affirm the district court's judgment.

N-Jie was indicted by a grand jury on February 7, 2006, and charged with conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a), 846. The indictment also contained a forfeiture allegation pursuant to 21 U.S.C. § 853. N-Jie entered a plea of not guilty and a jury trial commenced on May 16, 2006. The district court conducted an extensive voir dire at the outset of the trial. Among other questions, the district court asked the jury panel the following:

> Have any of the attorneys in this case ever represented you or any member of your immediate family on a regular, retainer-fee basis?
>
> Do any of you have any feelings or beliefs or attitudes regarding attorneys in general and particularly defense

2

> lawyers who are charged with representing defendants in a criminal case, that would prevent you from rendering a fair and impartial trial in this case?
>
> [C]an any of you think of any matters that you should call to my attention at this time which may in some way bear upon your qualifications to serve as a juror or which for any reason might prevent you from rendering a fair and impartial verdict based solely upon the evidence and on this Court's instructions as to the law which I will give you at the end of the case?

J.A. 15, 52. A prospective juror, Ms. Rosohac, remained silent in response to each of these questions, thereby indicating a response of "No." Ms. Rosohac was seated on the jury and ultimately became its foreperson.

At trial, the Government presented evidence that N-Jie distributed over 100 kilograms of marijuana during the course of a three-year conspiracy, from August 2002 through August 2005. Following the Government's presentation of evidence, N-Jie took the stand. N-Jie's testimony directly contradicted the testimony of the Government's law enforcement witnesses. N-Jie specifically denied ever selling marijuana. J.A. 602.

Following the presentation of the evidence, the parties proceeded with closing arguments. During the Government's opening argument, N-Jie's counsel thought he heard the prosecutor improperly vouch for the testimony of the Government's law enforcement witnesses. Specifically, N-Jie's counsel believed he heard the prosecutor say "something to the affect [sic] of '[y]ou are not going to believe the testimony of the defendant over the

testimony of these police officers.'" J.A. 706. This improper prosecutorial vouching was especially damaging, N-Jie claimed, because multiple law enforcement officers testified for the Government. The district court overruled the objection after a brief bench conference, finding that the prosecutor's remark did not constitute an improper vouching for the testimony of the law enforcement witnesses.

The jury convicted N-Jie on May 18, 2006, after a three-day trial. On May 25, 2006, N-Jie filed a motion requesting an evidentiary hearing and seeking a new trial on the basis of juror bias and on account of the alleged prosecutorial vouching. The Government filed a response on June 5, 2006. N-Jie's motion alleged that Ms. Rosohac was unable to be an impartial juror because she was prejudiced against defense counsel. J.A. 706. In support of that argument, N-Jie's motion further claimed that at some unspecified time before his trial, (1) Ms. Rosohac's mother had contacted defense counsel for the purpose of retaining defense counsel for an unrelated matter, (2) Ms. Rosohac had offered to pay $1500 as a retainer fee for her mother, (3) defense counsel's firm had declined the retainer fee and the representation, and (4) Ms. Rosohac had become angry when defense counsel's firm declined to represent her mother. J.A. 704-05. Ms. Rosohac's alleged enmity toward defense counsel's firm is the essence of N-Jie's juror bias claim.

On August 2, 2006, the district court issued a memorandum opinion and order denying N-Jie's request for an evidentiary hearing and denying the motions for a new trial. The district court first found that Ms. Rosohac's mother was not a "regular [or] retainer-fee basis" client, thus Ms. Rosohac's silence in response to the first question was honest. J.A. 15, 722. The district court also found, regarding the second and third questions, that Ms. Rosohac honestly indicated that she could be impartial. J.A. 722. Accordingly, the district court concluded that N-Jie was not entitled to relief under McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S. Ct. 845, 850 (1984), because Ms. Rosohac had answered all questions honestly.

The Probation Officer calculated a total offense level of 28 in the presentence report. That calculation included a two-level adjustment for obstruction of justice, pursuant to § 3C1.1, based on the fact that N-Jie gave false testimony at trial. N-Jie objected to the inclusion of an adjustment for obstruction of justice. The district court found that N-Jie committed perjury during his trial testimony and that a two-level adjustment for obstruction of justice properly applied. The application of the obstruction of justice adjustment resulted in a total offense level of 28 and an advisory guidelines range of 78-97 months' imprisonment. The district court sentenced N-Jie to 78 months imprisonment. N-Jie appeals the district court's decisions.

## I. Juror Bias

Our analysis of N-Jie's juror bias claims begins with the Supreme Court's holding in McDonough "that to obtain a new trial [on a juror bias claim], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough, 464 U.S. at 556, 104 S. Ct. at 850; Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002) (recognizing the applicability of the McDonough standard to federal criminal proceedings). We believe the district court properly found that Ms. Rosohac answered each question honestly and that N-Jie, therefore, was not entitled to relief under McDonough. Specifically, N-Jie's motion for a new trial alleged no facts to support a finding that Ms. Rosohac's mother was represented by defense counsel's firm "on a regular, retainer-fee basis." J.A. 15. Additionally, N-Jie's bare-boned allegation of Ms. Rosohac's enmity toward defense counsel's firm at some indefinite time in the past is insufficient, in this case, to show that Ms. Rosohac could not be impartial and that she, therefore, answered the voir dire questions dishonestly.

We have held, however, that a defendant's "[f]ailure to satisfy the requirements of McDonough does not end the court's inquiry . . . when the petitioner also asserts a general Sixth Amendment claim challenging the partiality of a juror based upon

6

additional circumstances occurring outside the voir dire." Fitzgerald v. Greene, 150 F.3d 357, 362-63 (4th Cir. 1998). A defendant is not automatically entitled to an evidentiary hearing. Rather, "it remains within a trial court's option, in determining whether a jur[or] was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias, or in exceptional circumstances, that the facts are such that bias is to be inferred." Id. at 363 (quoting McDonough, 464 U.S. at 556-57, 104 S. Ct. at 850 (Blackmun, J., concurring)); see Billings v. Polk, 441 F.3d 238, 245-46 (4th Cir. 2006) (The court is not "obliged to hold an evidentiary hearing any time that a defendant alleges juror bias."). We review a district court's decision not to grant an evidentiary hearing to consider a juror misconduct or juror bias claim for abuse of discretion. United States v. Duncan, 598 F.2d 839, 866 (4th Cir. 1979) (Because "[t]he circumstances in which juror misconduct can occur are probably as varied as all of human experience[,] [w]e have followed the view that the district court may deal with such claims as it feels the particular circumstances require and have only reversed for abuse of discretion."). The district court denied N-Jie an evidentiary hearing, holding that N-Jie "failed to establish actual bias" or implied bias. J.A. 723. We agree with the district court. N-Jie's motion for a new trial attempts to depict Ms. Rosohac's sentiments toward defense counsel as bias against N-Jie. This

7

depiction is purely conjectural, and N-Jie proffered nothing to suggest otherwise. Given the speculative nature of N-Jie's allegations, we conclude that the district court did not abuse its discretion in refusing to grant an evidentiary hearing.

We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006) (quoting United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003)). "Under the applicable legal principles, a trial court 'should exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." Smith, 451 F.3d at 216-17. For the reasons we concluded an evidentiary hearing was not warranted, we also find that the district court did not abuse its discretion in denying the motion for a new trial.

## II. Prosecutorial Vouching

On May 25, 2006, N-Jie filed a post-trial motion seeking a new trial on the basis of prosecutorial misconduct. N-Jie contended that during closing arguments the prosecutor "stated something to the affect [sic] of '[y]ou are not going to believe the testimony of the defendant over the testimony of these police officers.'" J.A. 706. The prosecutor denies having made this, or any, vouching statement. The district court did not hear the prosecutor make a

8

vouching statement, nor is such a statement reflected in the transcript.[1] The district court concluded that the prosecutor told the jury only that "you once again use your common sense when you basically weigh the testimony of the law enforcement agents that were monitoring the conversation." J.A. 677, 725-26. There is no evidence to support N-Jie's claim that the district court erred in refusing to grant a new trial on this ground.

---

[1]The transcript is as follows:

**Mr. Bernard:** Well, you once again use your common sense when you basically weigh the testimony of the law enforcement agents that were monitoring the conversation --

**Mr. Gillison:** Objection, Your Honor. May we approach?

**The Court:** You may.

**Mr. Gillison:** I believe that that would be improper argument to tell the jury. The jury has to [sic] judge's instruction with regards to what weight to give testimony. And this man is, by last statement, he was inferring that a law -- the law affords the agents' testimony is more credible than just an average citizen. I object to that. I object to that statement. I ask that it be stricken from the record.

**The Court:** All right. Mr. Bernard?

**Mr. Bernard:** I said that you'll have to weigh the statements of law enforcement. I don't -- I didn't say they'll have to believe more than any other witness, Your Honor.

**The Court:** I'm going to overrule the objection because it leaves it to the discretion of the jury to what weight it ascribes, and so I'm going to overrule the objection.

J.A. 677-78.

Assuming arguendo that the prosecutor improperly vouched for the testimony of the law enforcement agents, the district court properly concluded that a new trial was not warranted. "It is improper for a prosecutor to directly express his opinion as to the veracity of a witness." United States v. Loayza, 107 F.3d 257, 262 (4th Cir. 1997) (internal punctuation omitted). To warrant a new trial, a prosecutor's statement must improperly vouch for a witness's veracity and it must be "more likely than not that the remarks materially affected the appellant's substantial rights." Id. "[C]omments made by a prosecutor during closing arguments will not warrant a new trial unless they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994), cert. denied, 513 U.S. 1133, 115 S. Ct. 950 (1995)).

In Loayza, we instructed district courts to consider (1) "whether the comments misled the jury and prejudiced the appellant"; (2) "were [the comments] isolated or extensive"; (3) "absent the remarks, what was the weight of the evidence against the accused"; and (4) "were the prosecutor's remarks deliberate." Loayza, 107 F.3d at 262 (citing United States v. Moore, 11 F.3d 475, 482 (4th Cir. 1993)). In United States v. Wilson, 135 F.3d 291, 299 (4th Cir. 1998), we instructed district courts to further "consider (5) whether the prosecutor's remarks were invited by

10

improper conduct of defense counsel, and (6) whether curative instructions were given to the jury." Id. (internal citation omitted). "These factors are examined in the context of the entire trial, and no one factor is dispositive." Id.

Assuming that the prosecutor made an improper vouching statement, the district court's instructions prevented the statement from misleading the jury or prejudicing N-Jie.[2] See Francisco, 35 F.3d at 120 ("[W]e follow the presumption that the jury obeyed the district court's limiting instructions."). N-Jie conceded that the prosecutor's statement "was not deliberately placed before the jury to divert attention to extraneous matters," that the statement was isolated, and that the government adduced "strong competent proof" of N-Jie's guilt; prongs 2, 3, and 4, respectively. App. Br. at 24. There is no evidence that any statement "was invited by improper conduct of defense counsel." Wilson, 135 F.3d at 299. Though no immediate curative instruction was given, the district court's final jury instructions prevented the statement from misleading the jury or prejudicing N-Jie. Thus

_____

[2]The district court instructed the jury that:

In considering the testimony of witnesses who are police officers or agents of the government, you may not give more weight to the testimony of police officers or agents of the government than you give to the testimony of other witnesses for the mere reason that the witness is a police officer or an agent of the government.

J.A. 648.

11

even if the prosecutor made an improper vouching statement, we would affirm the district court's conclusion that the statement did not materially affect N-Jie's substantial rights or "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" Loayza, 107 F.3d at 262 (quoting Francisco, 35 F.3d at 120).

III. Obstruction of Justice Enhancement

At the sentencing hearing, the district court found that N-Jie committed perjury during his testimony. The district court accordingly applied a two-level enhancement for obstruction of justice, as set forth in USSG § 3C1.1. To apply an obstruction of justice enhancement, the district court must find by the preponderance of the evidence that the defendant gave "(1) false testimony (2) concerning a material matter (3) given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory)." United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995) (citing United States v. Dunnigan, 507 U.S. 87, 92-93, 113 S. Ct. 1111 (1993)). When reviewing the district court's application of the Sentencing Guidelines, we accept the district court's findings of fact unless they are clearly erroneous and give due deference to the district court's application of the Guidelines to the facts. United States v.

12

Cutler, 36 F.3d 406, 407 (4th Cir. 1994). The district court made a specific finding as to each element, stating that:

> I think it is clear to me as the presiding judge that the defendant perjured himself when he testified as to his involvement in the conspiracy of possession with intent to distribute marijuana. That was false testimony. It was involving material fact, and it was given in my opinion with the willful intent to deceive. It wasn't confused testimony. It wasn't mistaken testimony. And it wasn't faulty testimony in the sense that it was somehow accidental. So I think independent of his testimony . . . there is sufficient evidence to show obstruction of justice.

J.A. 747. We conclude that the district court did not clearly err in finding that N-Jie gave false testimony about a material matter with the willful intent to deceive. Therefore, the two-level adjustment for obstruction of justice was warranted.

## IV. Conclusion

For the foregoing reasons, the district court's judgment is

AFFIRMED.

13